LEONORA G. O'NEILL, Trustee, Appellee, *vs.* WILLIAM
WOLF, Appellant.

*Opinion filed February 21, 1930—Rehearing denied April 2, 1930.*

RINGER, WILHARTZ & HIRSCH, (SIDNEY J. WOLF, and BEN A. STEWART, of counsel,) for appellant.

FRANCIS M. LOWES, (HENRY N. SHABSIN, of counsel,) for appellee.

Mr. COMMISSIONER EDMUNDS reported this opinion:

On December 14, 1927, appellee filed her bill to enjoin appellant from erecting on a lot directly adjoining her place of residence a building violative of a previously established building line restriction. Construction of the building had been commenced shortly before this date. Appellant answered the bill, and thereafter completed the erection of the structure pending determination of the suit. Appellee filed a supplemental bill, setting forth the erection of the building and praying a mandatory injunction to compel removal thereof. The building constructed is a one-story business block designed for stores and shops and extends across the building line and the entire length of appellant's lot to the street line. The case is here on appeal from a decree awarding relief as prayed.

Appellant (defendant below) is the owner of lot 262 in Sheridan Drive subdivision, in the city of Chicago, said lot being at the southeast corner of Wilson avenue and Dover street. It extends east along Wilson avenue 173.81 feet to an alley, thence south along the alley a distance of 28.95 feet, thence westerly 170 feet to Dover street, thence northerly 52.8 feet along Dover street. Appellee (complainant below) is the owner of lot 261 in the same sub-

division, lying just south of lot 262 and fronting on Dover street. Her building on lot 261 is a two-story, four-flat brick. Her mother had acquired title to the lot in the year 1900, and appellee had been living there for more than twenty-five years.

In 1891 Sheridan Drive subdivision was laid out and platted into 354 lots by the Graceland Cemetery Company. It covered what might be designated as fifteen square blocks, although the blocks are rather rectangular than square in shape. Lots 261 and 262 are in the southwest part of the subdivision. There is a building line shown on the plat across lots 261 and 262, commencing at a point 50 feet east of the northwest corner of lot 262, running southerly across lots 262, 261 and eight other lots of the subdivision lying on the east side of Dover street and ending at a point 30 feet east of the southwest corner of lot 253. Thus the line does not parallel Dover street. A 30-foot building line parelleling Dover street runs across the front of the lots on the west side of Dover street, from Wilson avenue south to the end of the subdivision. No building line is shown on Wilson avenue.

In 1891 the Graceland Cemetery Company deeded lot 262 to one Dechent. This deed contained the following restrictions: "Subject to the building line restrictions shown upon the plat of said subdivision. * * * Neither shall any building be erected for any purpose upon the front portion of said lot lying between the building line shown on said plat and the street line of said lot. Every corner lot in said subdivision (except those lots fronting on Clark street) is sold and conveyed upon these further conditions: That no building shall be erected upon the front three-fifths of said lot facing upon the side street, nor shall any stable, barn or privy be placed upon the front three-fifths of said corner lot." Dechent was a remote grantor of appellant, who took title to lot 262 by deed dated September 16, 1927. This latter deed contained, among other

recitals, the following: "Subject to building and building line restrictions of record." In 1892 the Graceland Cemetery Company deeded lot 261 to one Regnell, the deed containing the same restrictive provisions as are above quoted from the deed to lot 262. Regnell was a remote grantor of appellee.

George L. Judson, a surveyor employed by the Chicago Guarantee Survey Company, testified for appellee that the northwest corner of appellee's building is 18 inches within the building line and the southwest corner is 34⅞ inches within the building line; that there are two bays on the front of the building; that the point at the north end of the north bay is 16⅞ inches over the building line and the point at the north end of the south bay is 4⅛ inches over the building line. Judson testified from a plat made by himself and which showed the building line as established by the original plat in its relation to the buildings along Dover street. This plat was introduced in evidence. From it and Judson's further testimony it appears that adjoining appellee's property on the south is a two-story framehouse, the northwest corner of which is 37⅛ inches within the building line and the southwest corner of which is 36 inches within the building line, with a porch extending about 54 inches west of the building line; that south of this is a two-story framehouse, no portion of which extends over the building line but with a porch extending from six to seven feet over the building line; that south of this is a two-story framehouse, the northwest corner of which is 42 inches within the building line and the southwest corner of which is 53 inches within the building line, with a porch from six to seven feet over the building line; that south of this is a two-story stucco house, the main part of which is about five feet within the building line, with a porch extending from three to four feet over the building line; that south of this is a three-story framehouse, the northwest corner of which is 68⅞ inches within the building line and

the southwest corner of which is 84 inches within the building line, with a porch extending from four to five feet over the building line; that south of this is a three-story brick building within the building line but with one corner of a porch $5\frac{5}{8}$ inches over the building line; that south of this is a three-story brick building, the northwest corner of which is $23\frac{1}{8}$ inches within the building line and the southwest corner of which is $47\frac{1}{4}$ inches within the building line, with a bay extending $13\frac{3}{4}$ inches over the building line; that south of this is a three-story brick building well within the building line; and that south of this is a three-story brick building, the northwest corner of which is $1\frac{1}{4}$ inch over the building line and the southwest corner of which is on the building line, with a bay $5\frac{1}{4}$ inches west of the building line. This latter building is on the last lot of the subdivision to the south.

F. J. Setchell, president of the Hammond Dry Goods Company, who lived a few doors south of Wilson avenue on Dover street, described the porches on the houses along Dover street south of Wilson avenue as mostly open. This is further evident from photographs in evidence. Setchell further testified that there are no buildings north of Wilson avenue on the east side of Dover street that are built clear up to the sidewalk line; that to the naked eye these buildings appear to be east of the sidewalk line between 40 and 50 feet; that the same is true of the west side of Dover street north of Wilson avenue.

Witness Judson also testified as to the relation between the buildings and the building line on the west side of Dover street from Wilson avenue south. Without going into detail, it may fairly be stated that the condition is substantially the same as that above described as existing on the east side of the street and south of appellee's property, although more of the buildings have porches, and in some instances these latter project a greater distance beyond the building line on that side of the street than do the several

porches on appellee's side. Testimony was also offered by Judson as to the relation between the buildings on both sides of Dover street from Wilson avenue north to Leland avenue, the first east and west street north of Wilson. While instances appear near Leland avenue of somewhat greater disregard of the building line than exist on appellee's side of Dover street south of Wilson avenue, the first building on the east side of Dover street and north of Wilson avenue is within the line.

Fred Lund, a surveyor employed by Emmet Kennedy, testifying for appellant, stated that he had made a survey of the Sheridan Drive subdivision with regard to street lines. Based on a plat which he had prepared he gave extensive testimony with regard to the relation of buildings to the street lines, not only on Dover street south and north of Wilson avenue but on the other streets of the subdivision, some of them four and five blocks away from the property involved. This plat was introduced in evidence. With respect to the property along Dover street, the figures shown by Lund's plat and testified to by him do not coincide with those of Judson. Based on Lund's figure showing the bay of appellee's building to be 45 feet 8¾ inches east of the street line of Dover street, appellant asserts that appellee's building encroached over the building line four feet 3¼ inches. Appellant furthermore asserts greater encroachments all along that side of the street than those testified to by Judson. If the building line on that side ran 50 feet east of Dover street for its entire length to the south end of the subdivision it would be possible to follow appellant in his statement of fact, but from inspection of the copy of the subdivision plat introduced in evidence, to say nothing of the testimony and plat of Judson, it appears to be a mathematical impossibility that the building line at the points in question could be 50 feet from the street line, and it further appears that the building line at such points must of necessity be less than 50 feet from the street.

So far as the extent of encroachments over the building line on the east side of Dover street is concerned, there is no conclusive showing that the testimony of the respective witnesses is in conflict, and that of Judson, being directly to the point, may be assumed to be correct.

Before proceeding with consideration of appellant's assignments of error it will be helpful to have clearly in mind the general theory upon which appellee's equity rests. This was well expressed in *Wiegman* v. *Kusel,* 270 Ill. 520. This court quoted the following language from the leading case of *Tulk* v. *Moxhay,* 2 Phill. Ch. 774: "It is now contended, not that the vendee could violate that contract but that he might sell the piece of land, and that the purchaser from him may violate it without this court having any power to interfere. If that were so it would be impossible for an owner of land to sell part of it without incurring the risk of rendering what he retains worthless. It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor and with notice of which he purchased. Of course, the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price in consideration of the assignee being allowed to escape from the liability which he had himself undertaken. That the question does not depend upon whether the covenant runs with the land is evident from this: that if there was a mere agreement and no covenant this court would enforce it against a party purchasing with notice of it, for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." After so quoting, the court said: "The right to enforce

this restriction upon the use of the land is based, not upon the agreement made by the subsequent purchaser, but upon the theory that each purchaser buying a lot with notice of a general plan of improvement impliedly assents thereto and can be compelled to comply therewith at the suit of the owner of any other lot, without reference to the order in which the lots were sold. (*Parker* v. *Nightingale*, 6 Allen, 341; 1 Tiffany on Real Prop. sec. 352.) An owner has a right to sell his property upon such terms and conditions as he may think proper, and if the terms are accepted by the grantee and are not objectionable in law they will be enforced at the suit of the one in whom the right is vested. If a subsequent owner has taken title with notice, either actual or constructive, of a binding agreement between his grantor and the original owner establishing a building restriction, he will be bound to abide by it and equity will enforce it. (*Hays* v. *St. Paul M. E. Church*, 196 Ill. 633.) A court of chancery will recognize and enforce agreements concerning real estate although such agreements are not expressed with technical accuracy; nor is it material that such stipulations should be binding at law or that there should be privity of estate between the parties in order to warrant equitable relief. (*Frye* v. *Partridge*, 82 Ill. 267; *Parker* v. *Nightingale, supra*.) Such building restrictions will be enforced in equity upon equitable principles, each case being considered with reference to its own circumstances.—*O'Gallagher* v. *Lockhart*, 263 Ill. 489."

Appellant contends that appellee should not be allowed to maintain the present suit because appellee's own building violates the restriction complained of, citing several cases which are claimed to be decisive.

In *McGovern* v. *Brown*, 317 Ill. 73, five complainants filed a bill to enjoin violation of a 30-foot building line restriction. The proposed encroachment consisted of sun porches that would extend 10 or 12 feet beyond the building line. It appeared that three of the five complainants

owned adjacent buildings, and porches, bays and steps thereon extended beyond the building line as much as 8 or 9 feet. The court denied relief, saying: "The facts in the record disclose, as already shown, that not a single person who has bought a lot in the south half of the block and has built upon it has complied with the restriction but all of them have violated it. The encroachments upon the building restriction are substantial in every instance, and the owners of the vacant lots and the complainants in this suit have stood by and acquiesced in these substantial violations of the building line restriction,. and three of complainants have themselves violated it in constructing 'their buildings."

In *Kneip* v. *Schroeder,* 255 Ill. 621, complainants sought to enjoin violation of a 20-foot building line restriction. Defendant proposed to erect a building occupying "a portion of the space" between the building line and the street. It appeared that since the subdivision was laid out an elevated railroad had been constructed alongside the property involved, changing the nature of the neighborhood. The court denied relief, commenting upon the changed conditions due to the presence of the elevated railroad, and also saying of twenty-three buildings along the street: "Without taking the time to describe each building, it may be said that all of these buildings, with one exception, have extensions, as above described, from 2 to 9 feet beyond the building line, and in many instances the main wall of the building is slightly over the building line. Most of these extensions were as high as the first story of the building and were a part of the building itself."

In *Curtis* v. *Rubin,* 244 Ill. 88, complainant sought to enjoin violation of a 15-foot building line. Defendant proposed to erect a building extending to the street line. It appeared that all the complainants, with one exception, had erected their buildings three or four feet over the building line, and had, in effect, established a new building line that

much beyond the old one, the result being a symmetrical and uniform line of buildings. Other owners along the street, however, had, without objection, erected buildings running eight or nine feet over the line. One such building was being erected when the bill was filed but no objection was made thereto. The lower court established a new building line four feet beyond the original one and enjoined defendants. In reversing the decree it was said: "Equity will not enjoin a breach of a restriction or condition if the original plan has been abandoned·or the right waived. * * * There was, however, no observance of the building line by the complainants or other owners of the lots. * * * It appears there were two buildings going up on lots 11 and 12 at the same time as the defendants' building and extending within six feet seven and one-half inches of the street line, which was more than four feet outside of the line established by the court, and it does not appear that the owners of those buildings were interfered with. * * * In this case complainants, who had themselves disregarded the building line, were asking a court of equity to enforce the restriction. Unquestionably, if they had observed the line themselves and not assented to its violation by others, equity would have protected their rights, but they disregarded the building line to the extent that it suited their desires or convenience to do so, and the only question between them and the defendants related to the extent or degree to which the restriction could be ignored. We do not think that the complainants who had disregarded the restriction and abandoned the building line created by the plat could be heard to object that the defendants were violating the condition to a greater extent than they were."

In *Ewertsen* v. *Gerstenberg,* 186 Ill. 344, complainants sought to enjoin violation of a 30-foot building line. Defendant owned lots at the southwest corner of Wrightwood avenue (running east and west) and Orchard street (running north and south). Complainants owned vacant lots

on Orchard street to the south. Between complainants' lots and those of defendant were four other lots and an alley. Two of these other lots, lying immediately north of complainants', were vacant, but upon the two beyond and toward the alley there was a two-story structure extending about half way over the building line toward the street. The eight lots immediately south of complainants' property on Orchard street had been improved with large two and three-story residences, the fronts of all of which extended over the building line from seven to eleven feet, besides the space occupied by porches, stoops and steps. Across the street from complainants' property there had been erected a three-story apartment with stone front, only three feet from the street line. The court denied relief. Speaking of the above encroachments on property immediately south of that owned by complainants the court said: "Complainants acquiesced in these encroachments, notwithstanding the buildings were nearer to their said lots than appellant's building will be when constructed." The court further said: "In the case at bar it cannot be said there has been any uniform observance of the restriction in the vicinity of the property in question affected by the restriction, and we are of the opinion that the value of the easement—treating it as such—for all practical purposes has been destroyed. As to the property of appellant [defendant] the restriction would seem to have become of no value whatever, and it would be a great hardship to enforce it against him when all corresponding benefit has been taken away from him by the action of others, when to so enforce it would destroy the beneficial use of his property and confer no substantial benefit on other property owners or the complainants. In other words, we are of the opinion that the restrictions against building, so far as they affect this part of Orchard street, have by the general consent and acts of the property owners, acquiesced in by the complainants, been so far disregarded and abandoned, and the reserved space so far ap-

propriated to other uses, as to make it inequitable to enforce them against appellant in the use of his said lots."

In *Loomis* v. *Collins,* 272 Ill. 221, complainants who lived on one street sought injunction against violation of a 30-foot building line on another. The main part of defendant's building did not go beyond the building line, but two sun porches projected over the line by 8½ feet. The court pointed out that of eighty-seven houses built in the subdivision "all but three have covered porches extending over the building line from two to twelve feet. Fifteen of these porches are enclosed with sash and glass and all of them are screened in during warm weather. * * * Parts of the sides and fronts of a number of the porches are enclosed with brick, cement or solid, opaque building material."

The difference between the situation presented by the present case and that involved in each of these several cases is at once apparent. In all of them the space reserved between building line and street was less than in the present case, and the violations set up by way of estoppel were proportionately much greater in actual distance, to say nothing of being substantially greater in various other significant respects. In the *McGovern case* the violation of the restriction had been not only substantial but universal as well. In the *Kneip case* the violations by complainants were substantially greater than in the present case. Moreover, there was present the clear showing of a complete change of neighborhood, directly affecting the very property in question. In the *Curtis case* the court was faced with the spectacle of a substantially violating complainant seeking to enjoin a violation by one party while shutting his eyes to an adjacent and substantial violation by another. In the *Ewertsen case* complainants had permitted substantial violations immediately adjacent to their property on one side, then turned around and sought to enjoin defendant from doing something on property separated from complainants' by an alley and four other lots, upon

two of which substantial violations had been permitted. In the *Loomis case* it was sought to enjoin defendant from a violation not distinguishable in extent from that of complainants.

If the only purpose of a building line restriction were to insure uniformity in the appearance of buildings erected on the property there might be sufficient reason for holding that a party who has to any degree violated such a restriction, thereby himself making the purpose impossible of accomplishment, should be barred from any attempt to enforce it, but after pointing out that one purpose of such restriction is to secure uniformity, this court further said in *O'Gallagher* v. *Lockhart,* 263 Ill. 489: "The establishment of a building line also creates an easement of unobstructed light, air and vision for the benefit of the public and for the benefit of the owners upon whose property the restricted area is laid out." This court has made it plain that a partial disregard of a building line restriction will not necessarily operate as an abandonment of it altogether, where a material and beneficial part remains. (*Loomis* v. *Collins, supra.*) In *Ewertsen* v. *Gerstenberg, supra,* it was said: "We do not mean to say that an easement abandoned in part will be held as abandoned altogether, for where it is abandoned *pro tanto* only, and a material and beneficial part remains, it will be protected." With these expressions of the court in mind, it is clear that the language quoted by appellant from *Curtis* v. *Rubin, supra,* to the effect that "we do not think that the complainants who had disregarded the restriction and abandoned the building line created by the plat could be heard to object that the defendants were violating the condition to a greater extent than they were," cannot properly be construed to say more than it means as applied to the facts of that particular case.

In the light of these well-considered principles it cannot be said that because appellee's building projects in one or two places a foot or a foot and a half over a 50-foot build-

ing line she cannot for that mere reason enjoin the maintenance of a building on the next lot which blankets her property on that side with a 50-foot wall extending to the sidewalk. The situation is quite similar to one presented to the Massachusetts court in *Bacon* v. *Sandberg*, 179 Mass. 396, 60 N. E. 936, where it was said: "Lastly, it is urged in defense that the plaintiffs cannot come into a court of equity for redress because they have infringed the restrictions by allowing projections from their houses into the space of 13 feet between the houses and the lines of Beacon street. These projections consist of bay-windows, piazzas and steps. It appears to be settled in this commonwealth that a plaintiff is not prevented from obtaining relief by the fact that he has not objected to a violation of a restriction by someone in the neighborhood other than the defendant. (Citing cases.) When a breach of a restriction or of a covenant has been committed by the plaintiff the case stands somewhat differently. Whether a court of equity will or will not aid the plaintiff in such a case depends largely upon the question whether there has been such a material and substantial breach as will enable the court to say that it ought not to interfere. (Citing cases.) In the case before us it may be assumed that the plaintiffs, by their conduct in respect to their own houses, could not invoke the aid of a court of equity to prevent the defendants from erecting a piazza, bay-window or steps extending into the restricted space. But the building of a separate house in this space is something the plaintiffs have not done." A similar rule was applied in *Godley* v. *Weisman*, 133 Minn. 1, 157 N. W. 711.

Whether or not this language of the Massachusetts court should be construed as laying down a rule to the effect that where a complainant has himself violated a building line the extent of his right to enjoin its violation by others may always be gauged exactly by the extent of his own violation, it does indicate forcefully that, taking in consid-

eration the general scheme back of the restriction, there is latitude in which to weigh the alleged violations of complainant and defendant, and although complainant may not enjoin others from doing the same as he himself has done, if his own violation has not appreciably conflicted with the purpose sought by the plan he may have relief as against one who threatens action which would completely abrogate the benefits intended. Such principle is entirely consistent with the decisions of this court and its recognition is decisive of appellee's rights, so far as the present point is concerned. We cannot say that there has been here any such material and substantial breach by appellee that a court of chancery should not interfere to protect her against a breach by appellant in a degree as flagrant as it would be possible to make it.

Appellant further contends that appellee's suit is barred because there has been a general abandonment and violation of the building line restriction by others, in which appellee has acquiesced. In this connection appellant relies upon the testimony tending to show violations not only on Dover street but throughout the entire subdivision, and calls attention to the principles of law laid down in *McGovern* v. *Brown, supra, Kneip* v. *Schroeder, supra, Curtis* v. *Rubin, supra,* and *Ewertsen* v. *Gerstenberg, supra.* In considering the law on this point it should be kept in mind that according to the plat no building lines at all were prescribed on Wilson, Leland and Lawrence avenues, (the east and west streets of the subdivision,) nor was any building line prescribed along Clark street, running north and south. On other north and south streets some of the building lines are 30 feet, some 35 feet, some 50 feet, and some irregular, as in the case of the one across the lots involved in the present proceeding. Those who laid down these lines clearly had in mind differences in conditions affecting the property on the several streets, and for this reason one is put on notice that evidence of violations on other streets

is not entitled to the force that it might rate if uniformity throughout were apparent from the plan adopted. As to the authorities cited by appellant on this point where relief was denied, reference to the discussion of them above will make clear that they are not conclusive of appellee's rights. In each instance the violation acquiesced in was substantial and was so considered by the court and was comparatively near at hand. The equities involved were in a different state of balance.

In taking up for consideration the effect of alleged acquiescence in violation of restrictions on other streets of the subdivision than that on which appellee's property lies, we are met at the outset by the following significant language from *Loomis* v. *Collins, supra:* "In the first place, it does not seem reasonable that the platting of a building line on lots fronting Jeffery avenue was intended for the benefit of all the lots fronting the other avenues in the subdivision. The disregard of the building line on Jeffery avenue would not affect the light, air or vision of lots fronting other avenues, nor their uniformity with reference to the location of buildings on such other avenues." Though the case does not clearly go off on this ground, the implication is that property owners would ordinarily have no ground for complaint about violations of restrictions on other streets. That the actions of owners on other streets would not bind those elsewhere was directly stated by this court in *Ewertsen* v. *Gerstenberg, supra,* strongly relied on by appellant.

In holding that acquiescence in violations of building restrictions is not material where they occur on other streets than the one directly involved, the New Jersey court said in *Morrow* v. *Hasselman,* 69 N. J. Eq. 612, 61 Atl. 369: "It is insisted, in the first place, that the covenant should not be enforced because of the previous violations of these building restrictions which have been allowed on Allen avenue and on the other avenues and streets. As to alleged

violations on other streets and avenues, my view is that, even if proved, they are not material in this case, as the restrictions in each avenue, in a general plan of this kind, must be considered as adopted with special reference to each avenue and its improvement, and the rights of purchasers on one avenue who have in good faith bought and built according to its restrictions are not impaired or affected by acts of the vendor or other purchasers relating to the then existing restrictions on other avenues. As to the alleged violations of the restrictions on Allen avenue, they must be material and such as to prevent the general plan relating to that avenue from being carried out. The materiality of the violation is to be determined by the circumstances of each case, and the question seems to be whether they are such as to indicate an abandonment of the original general plan and make its enforcement inequitable because of the changed condition of the property under restriction. * * * The violations set up by defendant are principally encroachments or alleged encroachments upon the building line by the piazzas on the second story of some of the houses on Allen avenue and the projection of the gables of the houses over the line. In some of the houses there are round towers, bays or projections on the second story, two or three feet beyond the line. None of these violations are of such a character as to indicate an abandonment of the building line or the restrictions of the covenant, even if it be assumed that a second-story piazza is within the covenant. And, as against the present complainant, they have no force as indicating a waiver or abandonment on her part of the entire benefit of the covenants when necessary to protect her own house."

It would be going far to hold that appellee in the present case could protect herself in these matters only by protesting, to the extent of entering the legal forum, if necessary, against violations on other streets that affect her in no practical way whatever, or even upon her own street

but so far away or of such a nature as to be of no noticeable effect upon her own property in its relation to the restriction involved. The line beyond which a party should not be made to go under such circumstances should be drawn somewhere short of that point. The sound principle in situations of this kind would seem to be that the claim of acquiescence as barring a property owner from enjoining the violation of restrictions by others should be measured in its force by the relation of the asserted violation to the individual property of complainant, and such is, in fact, the very rule laid down in later New Jersey cases. (*Brigham* v. *Mulock Co.* 74 N. J. Eq. 287, 70 Atl. 185; *Bowen* v. *Smith,* 76 N. J. Eq. 456, 74 Atl. 675.) Such rule was recognized and applied in *Payson* v. *Burnham,* 141 Mass. 547, where the court enjoined the maintenance of a bay-window in a house adjoining complainant's. It was shown that along the street there were many other windows and steps which projected several feet over the line. The court said: "The fact that other bay-windows have been erected without expressed objection does not cut off the plaintiff's right to object to one which injuriously affects them. According to the plan used at the hearing there was no other bay-window so near to the plaintiff's house as to interfere with their prospect or to afford the least presumption of a waiver by them." Application of the hard and fast rule contended for by appellant would result in holding that simply because appellee did not protest violations on other streets which she could not see from her property and perhaps had no occasion to visit at any time she could do nothing to protect herself in the present instance, and because she did not prevent a certain few of her neighbors on her own street from making small encroachments which affected her property in the most trivial way only, not constituting any appreciable violation of the restrictive purpose, she is now estopped to enjoin appellant from erecting a solid wall for 50 feet along the front side

of her lot. No such result can be approved by a court of chancery.

Appellant next contends that the case is governed by the rule of law that where the property involved has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief asked would be a great hardship on the owner and of no benefit to complainant, equity will refuse to intervene in complainant's behalf. This court announced such a rule in *Ewertsen* v. *Gerstenberg, supra,* and applied it in *Kneip* v. *Schroeder, supra.* There can be no question as to its soundness wherever the circumstances of a case are such as to make it applicable. In the effort to show that this rule is decisive here, appellant introduced considerable expert testimony as well as evidence in the way of photographs. A survey of all this evidence indicates that by it appellant demonstrated that there has been a noteworthy development of the Wilson avenue district of the city of Chicago, within which district Sheridan Drive subdivision may be said to lie. Portions of this district contain business activities, particularly along the east and northeast portions of the subdivision, and there has been a quick change from an outlying and sparsely settled region to one of large population. Recently many apartment hotels have been erected. Along Wilson avenue are many buildings used for stores and commercial purposes. The street level of many apartment buildings along Wilson avenue has recently been adapted to usage for store purposes. Certain witnesses for appellant testified that there have been marked changes in the Sheridan Drive subdivision in the past ten or fifteen years, and that in the ten years preceding the filing of the within suit about fifty new buildings had been put up in the subdivision. It was not definitely shown, however, that any of the buildings referred to had been erected in the immediate vicinity of Wilson avenue and

Dover street. These witnesses testified to the existence of four or five houses along Dover street between the south end of the subdivision and Lawrence avenue which took in roomers, one or two of which were south of Wilson; that all of the buildings on the corner of Wilson avenue and Dover street had some stores in them; that on the northeast corner of Wilson avenue and Dover street is an apartment building with four or five shops in the basement. From an inspection of photographs introduced in evidence it appears that this latter building is a large three-story brick, handsome in appearance, and the shops referred to are along Wilson avenue and unobtrusive to the vision. No sidewalk signs are in evidence over or in front of them. The plat shows that the building is not over the building line. The yard between it and Dover street is landscaped with trees and shrubbery. There is nothing about the corner or either street in that vicinity which carries the appearance of a commercial neighborhood. On the other hand, witness Setchell, who had lived south of appellee's property on Dover street for some twenty years, testified that he was familiar with the neighborhood; that Dover street, running south from Wilson avenue to Sunnyside, is mostly residences on both sides of the street; that the present condition of the neighborhood is practically the same as it has been for the last ten years, except that two or three flats have been erected. Photographs in the record show that the yards along the full length of Dover street, from the south end of the subdivision to Wilson avenue, are landscaped with trees and shrubbery. It is impossible to find in the record evidence which establishes any marked degree of change in the character and environment of the district in the immediate vicinity of Wilson avenue and Dover street. Appellant's argument is well taken only if appellee's right is to be held for naught because of changes which affect her immediate neighborhood in general, and her property in particular only very indirectly, if at all, so

far as the equity secured by the building line restriction is concerned.

The contention here made by appellant was made under very similar circumstances in the recent case of *Vorenberg* v. *Bunnell*, 257 Mass. 399, 153 N. E. 884, where complainant sought to enjoin the erection and maintenance of a public garage on the adjoining lot. The chancellor found that the purpose for which the restrictions were imposed by the restrictive covenant had failed because the district had changed from one of dwelling houses to a business neighborhood, and that to enforce the restrictions would harass and injure the defendants without effecting the purpose for which the restrictions were originally imposed. On appeal it was held that while the chancellor's general conclusions as to the area covered by the deeds having the restrictive covenants were supported by the evidence, his conclusions as to the limited area which was the subject of the suit were not so supported. The court said: "Having sole regard to the area covered by the deeds of 1872 and 1886 and considering it as a unit of terrestrial space, it is manifest the restrictions imposed in the deeds cannot be rigidly enforced. * * * Giving consideration to the entire findings, which include the covenant of the Boston Water Power Company to make the same restrictions of its lands lying northerly of the Boston and Albany railroad and easterly of Kenmore street, and to the findings which directly concern the tract covered by the deed of Braman to Howe in 1886, the plaintiff contends that there has been no material change affecting the character and use of the property on either side of Newbury street as a residential district; and, assuming the facts found to be such, the plaintiff further contends that he is entitled in the protection of his equitable easement—a property right—to a decree which shall enjoin the use of the lands on Newbury street in violation of the common restrictives, although on the facts found he may not be entitled to restrain or en-

force the restrictions as applied to other parts of the district. The position of the plaintiff is sound and is supported as a matter of authority by"—citing cases.

An argument like that presented here was made in *Rowland* v. *Miller*, 139 N. Y. 93, 34 N. E. 765, where the court affirmed a decree enjoining violation of a restrictive covenant against carrying on any offensive business, saying: "The plaintiff has done nothing and omitted nothing which should authorize the occupant of an adjoining lot, in violation of the agreement, to make her residence uncomfortable and undesirable. Generally, whether an equity court will refuse to restrain the violation of such an agreement and leave the parties to their legal remedies on account of the changed conditions affecting the premises to which the agreement relates rests in the discretion of that court, and such discretion will not be reviewed upon appeal here. The question to be determined in the exercise of such discretion depends largely upon the facts, and mainly whether the enforcement of the agreement would greatly harm the defendant without any substantial benefit to the plaintiff, so as to make the enforcement inequitable. We cannot say, reviewing all the evidence in this case, that it would be inequitable for the plaintiff to enforce the agreement."

While the courts of Michigan and Pennsylvania have, perhaps, gone farther than it is necessary for this court to go to justify relief for appellee in the present case, their views may properly be considered. In *Swan* v. *Mitshkun*, 207 Mich. 70, 173 N. W. 529, it was said: "Those owning property in a restricted residential district or neighborhood, and especially those who have their homes there and have been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block or subdivision in which they have purchased, are entitled to protection against prohibited invasion, regardless of how close business may crowd around them on unrestricted property, provided the original plan

for a residential district has not been departed from in the residential district, street or block and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers." In *Landell* v. *Hamilton,* 175 Pa. 327, 34 Atl. 663, the court said: "As long as such restrictions are not unlawful it is to no purpose to argue that they seriously retard the improvement of the city. We can no more strike down by decree a lawful restriction creating an easement than we can compel the lot owner to erect buildings in accord with the best style of architecture. * * * But what this court has uniformly held, and now holds, is, that where the restriction, notwithstanding the change of use of the land and buildings, still is of substantial value to the dominant lot, equity will restrain its violation, if relief, as here, is promptly sought. There may be, and doubtless will occur, cases where the restriction has ceased to be of any advantage. In such cases equity would not interpose and retard improvements simply to sustain the literal observance of a condition or covenant." To the same effect is *Brown* v. *Huber,* 80 Ohio St. 183, 88 N. E. 322.

Appellant cites the case of *Starkey* v. *Gardner,* 194 N. C. 74, 138 S. E. 408. That case is clearly distinguishable from the present one, in that it appeared that within the last seven or eight years there had been constructed upon the same street, and in close proximity to the property, store buildings, drug store buildings, garages, automobile sales places, banks, and other business houses.

Appellant calls attention to a quotation in the opinion from the case of *Ward* v. *Prospect Manor Corp.* 188 Wis. 534, where the Wisconsin court said: "Courts of equity will not enforce such restrictive covenants where the character of the neighborhood has so changed as to make it impossible to accomplish the purpose intended by such covenants. This may result from circumstances over which neither plaintiff nor defendant, nor any other resident of

the community, has any control. * * * Such changed conditions may result from the actual growth of the city, bringing industry, smoke, soot and traffic into such close proximity to the restricted area as to render it undesirable for the purposes to which it is restricted." There can be no quarrel with this statement, but it clearly has no application to circumstances such as appear from the evidence here. It is not shown here that the neighborhood is so changed as to make it impossible to accomplish the purpose intended by the restriction, nor have there been any changed conditions resulting from the factors suggested and which render the property undesirable for the residence purposes for which it was restricted.

Appellant lays considerable stress upon the fact that many property owners along Dover street had before the present proceeding signed a petition to take the property along that street out of the second volume zoning district and put it into a third volume district, pointing out that by the terms of the Chicago zoning ordinance a building on a corner lot in a third volume district could occupy fifteen per cent more of the lot area than one in a second volume district, and that buildings on such lots might be erected proportionately higher. Whether considered alone or in connection with appellant's other evidence, this does not have a sufficiently strong bearing on the real issue to be regarded as in any sense a determining factor in the present case. It must be remembered that we are dealing here with a complainant's equity of long standing from point of time and of unquestionable individual force. Under the doctrine announced in *Ewertsen* v. *Gerstenberg, supra,* and *Kneip* v. *Schroeder, supra,* this court is perhaps bound to permit it to be weighed whenever a defendant claims, as here, that changed conditions make further enforcement of a restriction unconscionable, but before such an equity is, in effect, wiped out by the action of a court of chancery, the circumstances demanding such

action should be more clean-cut and convincing than those shown of record here. As this court said in *Wiegman* v. *Kusel, supra:* "Equity will not, as a rule, enforce a building restriction where by the acts of the grantor who imposed it, or of those who derive title under him, the property, and that in the vicinity, has so changed its character and environment and the use to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced. (*Ewertsen* v. *Gerstenberg,* 186 Ill. 344.) But the character and condition of the adjoining property must have been so changed as to render the building restriction inapplicable according to the intent and spirit of the contract. (*Star Brewery Co.* v. *Primas,* 163 Ill. 652; see, also, *Turney* v. *Shriver,* 269 id. 164.) We do not think that the proof shows that there have been any such changes as to the character of the neighborhood as to estop plaintiffs in error from enjoining the contemplated improvement in so far as it violates this building line restriction heretofore created as to the lots of defendants in error."

Appellant's final contention is that the decree is improper because appellee did not join as parties complainant certain necessary and indispensable parties. It appeared that on the death of her mother the property passed by will in trust for the mother's children, one of appellee's sisters being named as trustee, with a provision that if said trustee died appellee was to become trustee. The sister trustee died before the present suit. Appellant asserts that appellee should have joined with her every person having any legal or equitable interest in lot 261, and that the decree cannot properly be given effect otherwise. That appellee, as trustee, holds the title to the premises with power of sale seems to have been established. She had the right to bring this suit, and no substantial reason is apparent why it should be defeated by the objection made. *Temple* v. *Scott,* 143 Ill. 290; *Green*

v. *Grant,* 143 id. 61; *Chapin* v. *Foss,* 75 id. 280; *Rice* v. *Brown,* 77 id. 549.

The decree of the superior court of Cook county is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*