ALBERT C. HANNA, Plaintiff-Appellee, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants-Appellants.

First District (1st Division)    No. 1—92—0175

Opinion filed August 29, 1994.

John W. Brown, *pro se*, and David T. Wallach and Michelle C. Pisut, all of Chicago, for appellants.

Jolivette & Templer, P.C., of Chicago (Lawrence M. Templer, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

On May 11, 1987, plaintiff, Albert C. Hanna, brought an action to enjoin defendants, American National Bank and Trust Company of Chicago, as trustee under trust agreement dated October 22, 1987, and known as trust No. 30378, and John A. Brown, from constructing two four-story, masonry towers on defendants' property, in violation of a 50-foot building setback line which plaintiff alleged was applicable to defendants' property. The towers were to extend flush to the sidewalk, with no setback remaining. In lieu of an answer, defendants filed a motion for summary judgment. The trial court granted defendants' motion for summary judgment and plaintiff appealed. On appeal, this court held that material issues of fact existed pertaining to the existence and enforceability of the setback line, and as to defendants' theory of abandonment and waiver, and reversed and remanded this cause to the trial court for a trial. *Hanna v. American National Bank & Trust Co.* (1988), 176 Ill. App. 3d 938, 531 N.E.2d 961 (*Hanna I*).

On remand, following a bench trial, the trial court granted plaintiff's requested relief and permanently enjoined defendants from constructing the proposed building over the 50-foot building line. Defendants now appeal the judgment of the trial court, contending that: (1) the trial court erred in failing to rule on defendants' affirmative defense of acquiescence; (2) the trial court's ruling that the 50-foot building line was not abandoned was against the manifest weight of the evidence; (3) the trial court erred in ruling that the 50-foot building line had not been judicially abolished; and (4) the trial court erred in ruling that there had not been a material change in the character of the neighborhood so as to render the building line void. For the following reasons, we affirm.

The record reveals the following relevant facts. Plaintiff filed a motion *in limine* requesting that defendants bear the burden of proof and of proceeding at trial. Plaintiff argued that the fact that a 50-foot setback line was created by the 1860 plot of subdivision is not in dispute, but rather, defendants have raised the affirmative defenses of abolishment and abandonment.

Defendants filed a response to plaintiff's motion, outlining seven defenses as follows: (1) that the 1860 setback line of 50 feet was abolished by an 1889 superior court case; (2) that the setback line was abandoned because of prior numerous, substantial violations of the line; (3) that plaintiff and plaintiff's predecessors in title have waived the right to enforce the setback line; (4) that there has been a change in the character of the neighborhood which makes enforcement of the setback line unreasonable; (5) that the setback line is not enforceable because defendants' property is zoned for commercial use; (6) that the setback line is not enforceable because the object of the restriction can no longer be accomplished; and (7) that defendants did not have legal notice of the restriction. On September 12, 1990, the trial court ordered that the defendants proceed bearing the burden of proof at trial, and allowed defendants to raise at trial the defenses as set forth in their response to plaintiff's motion *in limine*.

The record indicates that defendants made certain admissions prior to trial, including: (1) that they are the legal owners of 2508-2518 North Clark Street, a/k/a 501-519 W. Deming Place, the property located at the southwest corner of Clark Street and Deming Place; (2) that plaintiff is the owner of a three-story building located at 541 West Deming Place, Chicago, and that the properties located on the south side of Deming Place running west from Clark Street to Orchard Street, including plaintiff's and defendants' properties, are located in outlot "C" and were subject to a 50-foot setback line when created by a plat of subdivision recorded on November 27, 1860; (3)

that defendants' title insurance policy issued upon the purchase of its property contained a restriction reserving the "north fifty feet *** solely for courtyards and are not to be built upon"; (4) that the Cook County recorder of deeds tract book 560-B outlot "C," pages 4 and 5, contains entries pertaining to defendants' property; and (5) that the Cook County recorder of deeds tract book 560-C outlot "D," pages 122 through 126, contains entries pertaining to Wrightwood Avenue property located one block north of Deming Place.

The following relevant facts were adduced at trial. Plaintiff's property and defendants' property are separated by three separate four-story, multi-unit, brick apartment buildings and a 20-foot alley. Defendants' property is the only property on the south side of Deming Place, west of Clark Street, which is zoned for commercial use.

Deming Place is a one-way street, extending for only two blocks, west from Clark Street to Orchard Street. The only point of vehicular entry onto Deming Place, aside from an alley, is from Clark Street, as Geneva Terrace, the street intersecting Deming between Orchard Street and Clark Street, is a one-way street running south.

In support of their contention that the 50-foot setback line on Deming Place was abolished, defendants introduced into evidence defendants' exhibit 3, page 74 of the official City of Chicago map, which displays the south side of Deming Place, extending west from Clark Street to Geneva Terrace. Contained on the map is note "E," which appears in the left-hand margin of the map as follows: "Superior Court Case No. 125303, abolishes Bldg. lines on Business Streets." Note "E" is shown on the map as being applicable to the setback line existing on the south side of Deming Place, from Clark Street west to Geneva Terrace. Note "E" is also shown on the map as applying to several setback lines along Clark Street. The north side of Deming Place is not shown on the map.

A survey dated May 17, 1989, prepared at plaintiff's request, and admitted as plaintiff's exhibit 14, shows that defendants' building is set back from the sidewalk in excess of 50 feet. The survey further shows that every building on the south side of Deming between defendants' property and Geneva Terrace violates the 50-foot setback line from 5.61 feet to 6.78 feet. The plaintiff's survey notes that the City of Chicago map indicates that superior court case No. 125303 abolished the 50-foot building line.

The remains of the court file in the superior court case referred to in note "E" of the map revealed only that the case was entitled Gould v. Turner and Delaney, and that the case was dismissed by stipulation for want of equity on February 28, 1890. The court file does not contain the stipulation between the parties, nor does it

contain any pleadings or any other information regarding the nature of the case.

Plaintiffs submitted into evidence certified copies of pages from the official tractbooks maintained by the Cook County recorder of deeds, regarding both defendants' property, and property located one block north at the northwest corner of Clark Street and Wrightwood Avenue. The tractbook pages contain no entries referring to superior court case No. 125303 and do not indicate that the parties Gould, Turner or Delaney ever had title to the property. However, the tractbook pages pertaining to the Wrightwood Avenue property contain several entries reflecting ownership by Frank D. Turner and M.A. Delaney during the period 1889-1890, and an entry dated December 20, 1889, recording the number "125303 s," along with the name of the case, "Elwyn B. Gould v. Same [Frank D. Turner], et.al.," on the title to such property.

The title policy obtained by plaintiff upon the purchase of his property in 1965 does not refer to the 50-foot setback on Deming Place, but rather provides for a "Building line of 44 feet along Northerly line of Parcel 2, fronting on Deming Court." The record shows that on February 13, 1926, plaintiff's predecessor in title to the property located at 541 W. Deming entered into an agreement with the other owners of property on the south side of Deming, between defendants' property on the east and Geneva Terrace on the west. In the agreement, the owners recognized: the existence of the 50-foot setback line; the fact that the line had been inadvertently and unknowingly violated by approximately six feet by prior construction; and the desire of the owners to prevent the line from further encroachment. The agreement provided that in order to preserve the uniformity of the buildings on the street and to maintain the setback line restriction, the existing 44-foot setback would be maintained by all owners. Defendants' predecessors in title were not parties to the 1926 agreement.

At trial, John Blaul, assistant superintendent of the City of Chicago Bureau of Maps and Plats (Bureau), examined defendants' exhibit 3, map number 74, a "counter page" or "80-acre sheet" showing the south side of Deming Place extending west to Geneva Terrace. Blaul explained that the notes on the left-hand side show the subdivisions or other documentation recorded by the Cook County recorder of deeds. Blaul agreed that maps are possibly 95% accurate.

Blaul examined note "E" on the map. Blaul had no idea when note "E" might have been put on the map, because the position of the notes has nothing to do with the date of their entry. He stated that sometimes draftsmen put the notes in the wrong order. Blaul

stated that it is the practice of the Bureau to maintain a file with supporting documentation for any note contained on any map, but that his check of the Bureau file revealed no supporting documentation providing the basis for note "E" being placed on map 74.

Blaul examined plaintiff's exhibit 11, map number 73, also an official record of the Bureau, displaying a separate 80-acre portion of the City, and including both the north and south sides of Deming Place, as well as Wrightwood Avenue, west of Clark Street. Blaul indicated that note "E" did not appear on map 73 and that the 50-foot setback line did appear on the map as applying to the south side of Deming Place. Blaul had no explanation for the difference in the two maps.

Plaintiff testified as an adverse witness. Plaintiff has resided at 541 W. Deming Place since December 1965. He stated that all of Deming Place is residential, and that the 50-foot setback line was created in 1860. Plaintiff acknowledged the 1926 agreement and stated that, at that time, his property extended six feet beyond the 50-foot setback line, having been built in 1890 in violation of the setback line. Plaintiff further acknowledged that there are other properties on Deming Place that run over the 50-foot setback line.

Plaintiff stated that the purposes of setbacks are to create a uniform street, to create light and air, and to provide an openness to the extent designed by either the setback agreement or by zoning regulations.

Plaintiff stated that he can see a portion of defendants' property from all three floors of his house, looking out of his east and middle bay windows.

Defendant, John A. Brown, a real estate developer, testified on his own behalf. Brown stated that 2508-2518 N. Clark Street is a three-story brick building consisting of commercial spaces fronting along Clark Street and residential apartments.

Brown admitted that light and air are considerations in building residential units, and that it is most desirable for a building to have windows on all four sides. Brown admitted that the nature and character of Deming Place in the 1920s was residential. Brown further admitted that the title policy for the 2508-2518 N. Clark Street property shows that the northern 50-feet are restricted from being built upon.

Brown stated that his proposed new construction would contain 147,000 cubic feet volume of construction in the 50-foot setback area. Brown agreed that two, fifty-foot towers would have some impact on the air and light conditions of several buildings west of his property.

Philip Farley, a real estate developer, testified as an expert

witness on defendants' behalf. Farley stated that if a setback is violated it would affect the light or air for adjoining structures. Farley previously lived at 526 W. Deming Place and stated that the street contains apartment buildings and single-family residences.

Farley stated that plaintiff's bay window protrudes 5.75 and 5.60 feet past the face of the house, and that it is 45.5 feet from the front lot line. Farley stated that this and other setback violations on Deming are material and substantial. Farley admitted that some types of buildings on Deming would decrease in value if defendants' buildings were constructed. Farley further admitted that if every property on Deming was built out to the street line, the property values would be substantially reduced.

Lee Wigod, a commodity trader and analyst, testified in plaintiff's case. Wigod reviewed 21 map books at the Bureau in August and September 1987, for notations regarding superior court case No. 125303, or any notations regarding the abolishment of building lines on business streets. Wigod found no references to superior court case No. 125303 in any map book.

Leslie S. Pollack testified as an expert witness on plaintiff's behalf. Pollack has a master's degree in city planning and is a city planning consultant and adjunct lecturer in planning at the University of Illinois, Chicago. Pollack performed an analysis of Deming Place, to assess the impact of the 50-foot setback line on the character of Deming. Pollack reviewed the zoning ordinance, the official survey, case materials pertinent to building lines, and the disposition of setbacks. Pollack also reviewed setbacks on neighboring Orchard Street, Arlington Place, Wrightwood Avenue, and Burling Avenue.

Pollack observed that Deming consists of residential buildings that generally conform to a continuous building line, having a uniformity of appearance. He stated that Deming is an open and airy street. Pollack stated that in his opinion, the building line and the general adherence of the building line fulfill the three functions of a building line. He stated that the organization of the buildings along Deming is such that light and air are emitted to all buildings. Pollack stated that the building line provides uniformity, the degree to which clearly establishes a character along Deming which is unique to Deming as compared to adjacent neighborhoods. He stated that the fact that certain buildings extend to some degree into the 50-foot setback area does not impact his opinion because the issues of building line maintenance are issues of general conformance.

Pollack also reviewed defendants' plans for proposed construction. In Pollack's opinion, the proposed construction would violate the

intent of the building line, in that the additions would cut off light and air, and remove the degree of uniformity, effectively changing the character of Deming Place.

Pollack stated that in his opinion, the character along the south side of Deming Place is predominantly mixed-residential, composed of single-family and multi-family dwellings.

At the close of the evidence, the trial court granted leave to defendants to file an answer to plaintiff's complaint. Defendants' answer included three affirmative defenses.

On August 9, 1991, the trial court issued a memorandum of opinion, including findings of fact and conclusions of law. The trial court found that Deming Place is residential in character, half of its buildings being of dated unique stone or brick construction similar to the architecture existing at the turn of the century. The trial court found that no building on the south side of Deming Place is built more than approximately seven feet beyond the 50-foot setback line, nor closer than 43 feet from the northerly lot line adjoining the public sidewalks. As a result, Deming Place enjoys a generous amount of air, light and vegetation. The trial court noted that the testimony of defendant John Brown and defendants' witness, Philip Farley, did not contest the foregoing.

The trial court concluded that the 50-foot setback line on the south side of Deming Place was not abolished by superior court case No. 125303. The trial court noted that defendants admitted that case No. 125303 dealt with property on Wrightwood Avenue. In addition, the trial court found that the conflict between the two official city maps, defendants' exhibit 3, map 74 showing note "E," and plaintiff's exhibit 11, map 73, with no reference to note "E," indicated a map maker's error as to the case abolishing building lines on business streets. The trial court found this fact supported by pages from the Cook County recorder of deeds tract book, showing no entry concerning case No. 125303 as pertaining to any property on Deming, but pertaining to property on Wrightwood. The trial court further found that the 1926 agreement between property owners on Deming Place not to violate a 44-foot setback line evidenced that the line had not been abolished in 1889.

The trial court further found that the evidence showed that the encroachments on the setback line existing in the present case do not result in abandonment of the setback line because such encroachments are not material and substantial. The trial court noted that no building on the south side of Deming Place encroaches into the 50-foot building line greater than approximately 12% of the setback line.

The trial court also found that defendants failed to prove a change in the residential character of Deming Place such that the restriction could not be enforced. The trial court noted that while Clark Street is primarily commercial in character, the characteristics of Deming Place as a residential street are so unique so as not to be affected by change in circumstances on Clark Street. The trial court further found that defendants had constructive notice of the setback line, entered a declaratory judgment that the setback line remains valid and enforceable, and permanently enjoined defendants from building on the property. A final order was entered on August 12, 1991, in addition awarding costs to the plaintiff, to be determined by the trial court.

On October 11, 1991, defendants filed a motion for reconsideration. Defendants argued that in entering judgment in favor of plaintiff, the court overlooked defendants' third affirmative defense that plaintiff's predecessor in title waived the right for himself and all his assigns to enforce the 50-foot setback through the establishment of a new building line of 44 feet in 1926. Plaintiff responded, *inter alia*, that this court has found the relevance of the 1926 agreement "unclear where neither defendants nor their predecessor in title were parties to the agreement." *Hanna*, 176 Ill. App. 3d at 945-46.

The trial court denied defendants' motion for reconsideration on December 10, 1991. Defendants' timely appeal followed.

Initially, defendants contend that the trial court erred in failing to rule on their affirmative defense of acquiescence. Defendants argue that their third affirmative defense was "that the plaintiff's predecessor in title acquiesced when he expressly permitted the owner of the lot immediately to the east to encroach upon the 50 foot building line."

■ The record does not reflect that defendants raised "acquiescence" as a distinct affirmative defense. The record in fact reveals defendants' third affirmative defense as follows:

> "That all of the property owners on the south side of West Deming Place from North Geneva Terrace to the alley west of Clark Street have entered into a certain agreement on the 13th day of February, 1926, which changed the set back line from being 50 feet to being a set back line of 44 feet. That this agreement did not include the predecessor in title of your Defendant and as a consequence thereof the Plaintiff, who was a party to the said agreement, is estopped from asserting the existence of a 50 foot set back line upon your Defendant."

In their motion for reconsideration, defendants argued that the trial

court failed to rule on this third affirmative defense as quoted above, while recognizing that the trial court ruled on their first two affirmative defenses of (1) abolishment of the setback line by superior court case No. 125303; and (2) abandonment of the setback line by reason of other property owners having "violated the alleged 50 foot set back line in a material and substantial manner and that by their acts they have further *acquiesced* in the violation of the subject set back line." (Emphasis added.)

Defendants' argument is without merit. Our courts describe acquiescence as an element in consideration of the defense of abandonment, *e.g.*:

> "The doctrine of acquiescence which will make unenforceable an otherwise valid plan of restriction is *** [based] upon the proposition that tolerated violations of the restriction will, over the course of time, defeat the object of the restriction." (*Wallace v. Hoffman* (1949), 336 Ill. App. 545, 555, 84 N.E.2d 654.)

And:

> "A restriction can be shown to have been waived where there has been a general abandonment of it by others, in which plaintiffs have acquiesced." *Punzak v. DeLano* (1957), 11 Ill. 2d 117, 142 N.E.2d 64.

Defendants' reliance on *O'Neill v. Wolf* (1930), 338 Ill. 508, 170 N.E. 669, for the contention that it sets forth separate defenses of abandonment and acquiescence is misplaced. There, the court clearly frames the appellant's issue as follows:

> "Appellant further contends that appellee's suit is barred because there has been a general abandonment and violation of the building line restriction by others, in which appellee has acquiesced." *O'Neill*, 338 Ill. at 522.

In the present case, the record shows that defendants raised an affirmative defense of abandonment, of which acquiescence is a consideration, and upon which the defendants acknowledge the trial court issued a ruling. The record indicates that defendants never set forth in a separate heading or paragraph, or argued separately, any defense of acquiescence, but rather joined together this theory along with other defenses, and employed the same standard of proof. In fact, in their motion for reconsideration, defendants argued as follows:

> "Clearly Mr. Hanna could not invoke equity to enforce the 50 foot set back line against any of the other lots affected by the 1926 agreement. However, as owner of a lot included in the 1926 agreement, Mr. Hanna can enforce the 44 foot line against the other affected lots [citations]. *The fact that the buildings on his lot were built to the 44 foot line does not indicate acquiescence in violation of the 50 foot line.*" (Emphasis added.)

Other than to cite to statements made by counsel in closing argument, wherein counsel stated, "Acquiescence, big important issue in this case, [*sic*]" and continued to explain his theory of abandonment, defendants have failed to cite any reference in the record wherein they specifically requested that the trial court rule on a separate issue of acquiescence. In addition, we find that the ruling of the trial court is broad enough to embrace and include the issue of acquiescence, even had defendants requested a specific ruling on acquiescence; the results of the present case would not have been different.

Next, defendants contend that the trial court's finding that the 50-foot building line was not abandoned is against the manifest weight of the evidence. Defendants first argue that the trial court failed to take into consideration that a building located at 633 W. Deming extends almost 12 feet into the setback area, according to plaintiff's survey. Defendants argue that this is a 25% encroachment into the building line and is therefore substantial. Defendants further argue that several buildings across the street, on the *north* side of Deming Place, violate the setback restriction in excess of seven feet, as depicted on plaintiff's survey. The record indicates that the trial court found that no building on the *south* side of Deming Place violated the restriction by more than seven feet, or more than approximately 12% into the setback area. Defendants argue that the trial court's determination that a seven-foot violation into the 50-foot setback restriction is not material and substantial is not supported by case law.

As we stated in *Hanna I*, setback line restrictions will not be deemed unenforceable by reason of encroachments by a plaintiff or others unless such encroachments are so material and substantial as to undermine the purposes of the restriction and prevent the plan thereby created from being carried out. (*Hanna*, 176 Ill. App. 3d at 945, 531 N.E.2d at 965, citing *O'Neill*, 338 Ill. 508; *Punzak*, 11 Ill. 2d 117.) The purpose of a setback line restriction is to create an easement of unobstructed air, light and vision for the benefit of the public owners of the property covered by the restriction and to insure a degree of uniformity in appearance. (*Hanna*, 176 Ill. App. 3d at 945, 531 N.E.2d at 965, citing *O'Neill*, 338 Ill. 508; *Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 393 N.E.2d 646.) It is the defendant's burden to establish that the encroachments are so substantial and material as to have undermined the purposes for which the restriction was created. (*Hanna*, 176 Ill. App. 3d at 945.) The question whether an abandonment has occurred depends on the facts and circumstances of the particular case. *Punzak v. DeLano* (1957), 11 Ill. 2d 117, 120.

Defendants mischaracterize the facts and the law of cases upon which they rely. Defendants argue that the trial court's reliance upon *O'Neill* is misplaced, because in that case no violation of the 50-foot setback restriction was in excess of 1¹/₂ feet. However, the defendant in *O'Neill* argued that the plaintiff could not protest a proposed violation because her own property in fact violated the setback by over four feet. (*O'Neill*, 338 Ill. at 513.) The defendant in *O'Neill* argued that the restriction had been abandoned by violations in the form of bay windows and porches extending from several inches to six to seven feet over the setback line. (*O'Neill*, 338 Ill. at 511-12.) The *O'Neill* court held that the encroachments on the 50-foot setback were not so material and substantial to have effectively abandoned the restriction. *O'Neill*, 338 Ill. at 522.

A partial disregard of a building line restriction will not necessarily operate as an abandonment of it altogether, where a material and beneficial part remains. (*O'Neill*, 338 Ill. at 520.) The record indicates that the extension in the middle of 633 W. Deming is an enclosed bay, which extends from the ground to the roof for four stories. The trial court found that none of the encroachments on the south side of Deming operated to abandon the setback restriction.

In addition, this court is not concerned with the setback restriction on the north side of Deming Place, as the record shows that the north side is contained in a different subdivision, outlot "D." The record indicates that the parties agreed that the north side of Deming Place is not relevant to the determination of abandonment.

Defendants further argue that *McGovern v. Brown* (1925), 317 Ill. 73, 147 N.E. 664, supports the fact that a seven-foot encroachment into the 50-foot setback line is material and substantial. There, five complainants filed an action to enjoin violation of a 30-foot building line by the construction of sun porch additions to an apartment building that would extend 10 or 12 feet beyond the front of the building, and that much over the building line. The court held that the 30-foot building line had been abandoned, noting that every landowner who had built a home in the south half of the block, with notice of the restriction, including three of the five plaintiffs, had violated the restriction as much as eight or nine feet, and that all had acquiesced in these substantial violations.

*McGovern* is inapposite. In *O'Neill*, where a 50-foot setback restriction was also at issue, the court examined *McGovern* and found:

"[T]he space reserved between building line and street was less than in the present case, and the violations set up by way of estoppel were proportionately much greater in actual distance, to say nothing of being substantially greater in various other signifi-

cant respects. In the *McGovern case* the violation of the restriction had been not only substantial but universal as well." (*O'Neill*, 338 Ill. at 519.)

Indeed, the violations in *McGovern* amounted to 33% encroachments into the 30-foot building line. No such substantial universal encroachment is apparent in the present case.

Defendants further contend that the 1926 agreement establishing a 44-foot setback restriction proves abandonment of the 50-foot restriction. The record indicates that defendants' predecessor in title was not a party to this agreement.

We have previously found that the 1926 agreement was not intended to constitute an abandonment of the setback line, but rather that the setback line remain in existence subject to minor encroachments. *Hanna*, 176 Ill. App. 3d at 946.

Next, defendants contend that the trial court's determination that the 50-foot building line was not abolished by the 1889 superior court case No. 125303 was against the manifest weight of the evidence. Defendants argue that the evidence presented at trial, defendants' exhibit 3, official City of Chicago map 74, clearly shows through note "E" that the 50-foot setback line was abolished on Deming Place. The trial court found that note "E" as it applied to Deming Place on map 74 was "an obvious map maker's error." The trial court's conclusion is supported by the manifest weight of the evidence.

■ The record reveals that the remains of the court file in the superior court case referred to in note "E" of the map contains only the title of the case, Gould v. Turner and Delaney, and its disposition: that the case was dismissed by stipulation for want of equity on February 28, 1890. The court file does not contain the stipulation between the parties, nor does it contain any pleadings or any other information regarding the nature of the case.

In *Hanna I*, we noted that while as an official record the map is admissible to prove the matters contained therein, the accuracy and reliability of the note "E" legend was questionable in light of the other evidence presented in the trial court. (*Hanna*, 176 Ill. App. 3d at 944.) In the present case, the other evidence presented at trial continues to dissuade this court from relying upon the accuracy of note "E" contained in map 73.

Finally, defendants contend that the trial court erred in finding that a change in the neighborhood had not occurred. Defendants argue that the multiple-family residences on Deming Place, along with defendants' property being zoned for business use, constitutes a material change in the character of the neighborhood such that the 50-foot setback restriction has been abandoned.

A change in a neighborhood such as will prevent enforcement of a restrictive covenant must be so radical and complete as to destroy the purposes for which the restriction was imposed and to render the restriction unreasonable, confiscatory and discriminatory. The burden of proving such a change in the neighborhood is on the party attacking the restrictive covenant. *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 362 N.E.2d 382.

■ The record reveals that in 134 years since the plat of subdivision for Deming Place was created, the street has remained residential, and that while Clark Street is primarily commercial in character, the characteristics of Deming Place as a residential street are so unique so as not to be affected by change in circumstances on Clark Street.

Defendants' further contention that the business zoning of their property constitutes a change in the character of the neighborhood is without merit. The mere fact that a change has occurred in the neighborhood, *i.e.*, one lot zoned for business use, does not, alone, warrant a court of equity in relieving setback restrictions. *Punzak*, 11 Ill. 2d at 121.

For the reasons set forth above, we therefore affirm the judgment of the trial court, and remand this matter to the trial court for a determination of costs to be awarded to the plaintiff.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.