SAVE THE PRAIRIE SOCIETY, Plaintiff-Appellant, v. GREENE DEVELOP-MENT GROUP, INC., *et al.*, Defendants-Appellees (Midwest Trust Services, Inc., as Trustee, *et al.*, Intervenors-Appellees).

First District (1st Division) No. 1—00—3758

Opinion filed June 18, 2001.

Sidley & Austin, of Chicago (J. Andrew Schlickman, Susan V. Harris, and Faith E. Bugel, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Terrence P. Canade, Hugh C. Griffin, Kevin P. McJessy, Hugh S. Balsam, and Shane Blackstone, of counsel), for appellees Greene Development Group, Inc. and Founders Bank.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Save the Prairie Society sued to enforce a restrictive covenant in the deed for property Greene Development Group (defendant) owned. Plaintiff sought a preliminary injunction against development of the property pending determination of the suit to enforce the restrictive covenant. The trial court denied the motion for a preliminary injunction. Plaintiff now brings this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (155 Ill. 2d R. 307(a)(1)).

Greene's property is a five-acre lot in the southwest corner of a 200-acre area Fred'k H. Bartlett & Co. (Bartlett & Co.) once owned. On November 14, 1942, Bartlett & Co. deeded 10 acres to Bernard Ferrari. The deed provided that it was:

"Subject to the following restrictions *** which shall be construed as a covenant running with the land:

The minimum cost of any principal building erected or placed on said property shall be $5,000. ***

Property is restricted to residence and garden farming. Property shall not be used for hog, goat or mushroom farming."

The same day Bartlett & Co. deeded all of the remaining property to Frederick Bartlett (Bartlett) as trustee under a trust agreement for an entity he called "Fred'k H. Bartlett Realty Co. (not incorporated)."

Two months later Bartlett began distributing the remaining property to numerous other persons. He signed 21 separate deeds over the following 30 months, finally distributing the last 5 parcels between July 1945 and June 1947. Three of the deeds had no restrictive covenants. The wording of the covenants in the other deeds varied somewhat, but all included covenants forbidding any principal building other than a residence costing more than $5,000, and forbidding hog or mushroom farming.

Despite the restrictive covenants, owners eventually developed most of the 200-acre tract either with buildings other than residences or with many separate residences on each lot. But the properties in the area south of 26th Street largely abided by the covenants. All lots remained about five acres, and no property had more than one principal building, which was, in all cases, a single-family residence. In 1988 the owners of the lots on the southernmost 60 acres filed articles of incorporation for the Hickory Lane Homeowners Association, to operate the "Hickory Lane residential community" for the common benefit of its members, the owners of the properties. The community consisted of just the 12 lots in the 60-acre southern area.

Thirty-First Street is the southern boundary of the Hickory Lane residential community. Across 31st Street lies a forest preserve. On the west the residential community abuts a large vacant area operated as a landfill. An estate named Ashley Woods forms the northern boundary. On the east, the community borders the Wolf Road Prairie, an 80-acre nature preserve that is one of the largest black-soil prairies in Illinois.

Late in the 1980s, the owners of Ashley Woods sought to develop the property with a housing development. Plaintiff, an organization with approximately 1,200 members, sued to prevent the development because of its potentially adverse impact on the nearby prairie. Plaintiff sought to enforce the restrictive covenant in Bartlett's original deed for Ashley Woods. But plaintiff owned no property subject to the restrictive covenant, so it lacked standing to enforce the covenant. See *Westgate Terrace Community Associates, Inc. v. Burger King Corp.*, 66 Ill. App. 3d 721, 726, 383 N.E.2d 1355 (1978). Accordingly, plaintiff abandoned that count of its suit and eventually settled the case. Under the settlement the owners of Ashley Woods agreed to build in compliance with some constraints designed to reduce the impact on the prairie.

In 1991 plaintiff acquired an interest in a five-acre lot in the Hickory Lane residential community. The lot is half of the parcel Bartlett & Co. deeded to Ferrari in November 1942. Defendant also purchased a five-acre lot in the southwest corner of the Hickory Lane

residential area. Defendant proposed a development consisting of five buildings, including four residential buildings with 32 units in each building. In May 2000 defendant obtained municipal approval for the proposal.

Plaintiff brought this suit to enforce the restrictive covenant in the chain of title for defendant's property. The covenant provides:

"[T]he following restrictions *** shall each be construed as a covenant running with the land:

Except for outbuildings and auxiliary buildings, no building shall be erected, placed or maintained upon the premises herein described unless it shall be a single-family residence costing not less than $5,000 ***.

Said premises shall not be used for the maintenance, breeding or raising of hogs or goats or for the growing or production of mushrooms."

Defendant admitted that it knew of the covenant when it acquired the property.

Constantine Xinos, a member of the Hickory Lane Homeowners Association, petitioned to intervene, alleging that the outcome of the suit could affect his plan for developing his property. The court granted the petition. In answer to the complaint, Xinos claimed that the restrictive covenants were unenforceable.

Plaintiff moved for a preliminary injunction to prevent defendant from beginning development of the property prior to decision on plaintiff's suit to enforce the restrictive covenant. At the hearing on the motion, the superintendent of the Forest Preserve District of Cook County (the District) explained the District's responsibility for the Wolf Road Prairie. Because the largely undeveloped area of the Hickory Lane residential community provided a valuable buffer for the prairie, the District preferred to see no new developments in that area. When the District learned of a plan to build a school on one of the Hickory Lane properties, the District participated in discussions about ways to minimize the damage the school would cause the prairie.

The trial court recounted uncontested evidence that Bartlett & Co. deeded plaintiff's property to Ferrari on the same day it deeded the remainder of the 200-acre tract, including defendant's parcel, to Bartlett himself as trustee for the "Fred'k H. Bartlett Realty Co. (not incorporated)." Because the deed to the trust had no restrictive covenant, the court held that plaintiff's land lacked privity of estate with defendant's land, and therefore plaintiff lacked standing to enforce the restrictive covenant.

The court also found multi-unit residences and commercial uses of property in the northern part of the 200-acre tract and held that viola-

tions of the restrictive covenants in the deeds for those properties rendered the restrictive covenant in defendant's deed unenforceable. The court denied the motion for a preliminary injunction due to the likelihood that plaintiff would not succeed on the merits.

●1 Courts grant preliminary injunctions to preserve the status quo in a controversy pending a decision on the merits. *Heritage Standard Bank & Trust Co. v. Steel City National Bank*, 234 Ill. App. 3d 48, 54, 599 N.E.2d 1283 (1992). To show that the court should grant the injunction, a plaintiff must show (1) she has a right in need of protection; (2) legal remedies will not adequately protect the right; (3) without the injunction, she will suffer irreparable harm; and (4) if the proof sustains her allegations, she will likely succeed on the merits. *Heritage Standard Bank*, 234 Ill. App. 3d at 54-55. The trial court has discretion to grant or deny the request, and we limit our review to determining whether the court abused that discretion. *Schweikart v. Powers*, 245 Ill. App. 3d 281, 288, 613 N.E.2d 403 (1993). But the court abuses its discretion if it ignores recognized legal principles. *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083, 732 N.E.2d 1094 (2000).

●2, 3 In showing a right in need of protection, "[p]laintiffs only need show they raised a 'fair question' about the existence of their right and that the court should preserve the status quo until the cause can be decided on the merits." *Schweikart*, 245 Ill. App. 3d at 290. Courts will enforce reasonable restrictive covenants. *Mertel v. Howard Johnson Co.*, 191 Ill. App. 3d 114, 117, 547 N.E.2d 670 (1989). Owners of all similarly encumbered lots subject to the same general plan have the right to enforce such covenants. *O'Neill v. Wolf*, 338 Ill. 508, 514-15, 170 N.E. 669 (1930).

●4 The trial court here found that plaintiff had no right to enforcement of the covenant because plaintiff's property lacked privity of estate with defendant's land. But a plaintiff need not prove privity of estate for equitable enforcement of a restrictive covenant. *Wiegman v. Kusel*, 270 Ill. 520, 524, 110 N.E. 884 (1915). Defendant concedes on appeal that covenants remain enforceable in equity without privity of estate. The trial court here failed to apply recognized legal principles.

A plaintiff has an equitable right to enforce a restrictive covenant on a defendant's property "when it can be shown, expressly or by fair implication from the circumstances, that the restriction or covenant is part of a general scheme or plan for the mutual benefit of the owners of all lots in the particular tract." *Wallace v. Hoffman*, 336 Ill. App. 545, 548-49, 84 N.E.2d 654 (1949). To determine whether a general scheme incorporates the restrictive covenant, courts

"consider whether (1) the restrictions are included in all deeds to

the subdivision; (2) the restrictions have been previously violated; (3) the burdens imposed are generally equal and for the mutual benefit and advantage of all lot owners; and (4) notice of the restrictions is given in the recorded plat of subdivision." *Krueger v. Oberto*, 309 Ill. App. 3d 358, 370-71, 724 N.E.2d 21 (1999).

Defendant argues that the court must look to the entire 200-acre tract, and not to the Hickory Lane residential community, to determine whether a general scheme supports enforcement of the covenants. We disagree. In *Wallace*, which defendant cites in support of its argument, the court said that "a general plan may be found to exist even though there are violations *** of restrictions in the deeds to some of the lots in the area affected by the plan." *Wallace*, 336 Ill. App. at 552. Our supreme court similarly adopted a holding that "acquiescence in violations of building restrictions is not material where they occur on other streets than the one directly involved." *O'Neill*, 338 Ill. at 523. Thus, even when owners throughout most of a subdivision have violated their restrictive covenants, a property owner may have the right to enforce a restrictive covenant against the owner of a nearby property.

In *O'Neill*, the plaintiff and the defendant owned homes on Dover Street. A considerable business development, with buildings that violated the restrictive covenants, arose within their subdivision, but the businesses were not "in the immediate vicinity" of the parties' homes. 338 Ill. at 526. The court said:

"[W]here the property involved has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief asked would be a great hardship on the owner and of no benefit to complainant, equity will refuse to intervene in complainant's behalf.

\* \* \*

*** But the character and condition of the adjoining property must have been so changed as to render the building restriction inapplicable according to the intent and spirit of the contract." *O'Neill*, 338 Ill. at 526-32.

Applying these principles, the court held:

"It is not shown here that the neighborhood is so changed as to make it impossible to accomplish the purpose intended by the restriction, nor have there been any changed conditions resulting from the factors suggested and which render the property undesirable for the residence purposes for which it was restricted." *O'Neill*, 338 Ill. at 531.

Accordingly, the court found the restrictive covenant enforceable. See also *N.H. Engle & Sons, Inc. v. Laurich*, 98 Ill. App. 2d 18, 28-30, 240 N.E.2d 9 (1968).

•5 Here, too, the extensive violation of the restrictive covenants on other parts of the 200-acre tract had little effect on the character or condition of the land usage in the immediate vicinity of the parties' properties. The Hickory Lane residential area, on largely undeveloped land, retained the kind of residential character Bartlett sought in imposing the restrictive covenant on all purchasers of the properties. Under *O'Neill* the violations of restrictive covenants in the deeds for properties outside of the Hickory Lane area did not suffice to defeat plaintiff's right to enforce the restrictive covenant. The court may look to the Hickory Lane area to decide whether a common scheme supports the restrictive covenants.

•6 The deeds for all properties in the Hickory Lane residential community include restrictive covenants similar to those pertaining to the parties' properties. Each five-acre lot in the area holds exactly one single-family home costing more than $5,000, and no one engages in hog or mushroom farming. The restrictions on the property owners within the Hickory Lane area appear to benefit and burden all property owners equally. Although all property owners have notice of the restrictions in their deeds, the recorded plat of the area does not give notice of the restrictions.

While the absence of notice in the recorded plat is a factor for the court to consider, that factor alone is not determinative. *Wallace*, 336 Ill. App. at 553; *LoBianco v. Clark*, 231 Ill. App. 3d 35, 38, 596 N.E.2d 56 (1992). Recording in the plat of a subdivision may establish constructive notice of a restriction (see *Krueger*, 309 Ill. App. 3d at 371), but here defendant admitted it had actual notice of the restrictive covenant before it purchased the property.

We need not here decide whether plaintiff has the right to enforce the restrictive covenant. We hold only that plaintiff has raised a fair question about the existence of such a right.

•7 Next, we must consider whether plaintiff has an adequate remedy at law and whether plaintiff will suffer irreparable harm without the injunction. Plaintiff seeks to protect the residences in the Hickory Lane residential community from developments that would greatly increase the population of the area. The residential community also protects the bordering prairie land and its wildlife. Xinos, a second owner in the area, intervened in this case as a defendant, indicating the result here may affect his plan to develop his lot. Without defendant's development, only the northern boundary of the Hickory Lane area abuts developed property. But defendant's development on the southern end of the Hickory Lane area would surround the area with high density developments, probably changing the character of the area and encouraging further dense developments of the kind Xi-

nos plans. No remedy at law can adequately protect plaintiff from the likely damage to the character of the area.

Once the developments change the neighborhood and the habitats for local wildlife, the law may be powerless to return the lands to their predevelopment condition. Here, as in *Forest Preserve District v. Mount Greenwood Bank Land Trust 5—0899*, 219 Ill. App. 3d 524, 529, 579 N.E.2d 1066 (1991), "Destruction of the flora, fauna and scenic beauty would be irreparable, and indeed, final." Plaintiff will suffer irreparable damage without the injunction.

●8 Next, we address the likelihood of success on the merits.

"There are exceptions to the necessity of establishing probable success on the merits, however. [Citations.] If the subject of the injunction is property which may be destroyed, or if, as here, the plaintiff seeks only to maintain the status quo until the ultimate issue is decided, the injunction is properly allowed or maintained even where there may be serious doubt as to the ultimate success of the complaint." *Blue Cross Ass'n v. 666 North Lake Shore Drive Associates*, 100 Ill. App. 3d 647, 650-51, 427 N.E.2d 270 (1981).

●9 Defendant contends that plaintiff is not likely to succeed on the merits because it waived the right to enforce the covenant when it settled its complaint against the Ashley Woods development. But plaintiff owned no property in the 200-acre tract when it sued Ashley Woods, and therefore it had no right to enforce the restrictive covenant. See *Westgate Terrace*, 66 Ill. App. 3d 721. Since it purchased its property in the Hickory Lane residential community, plaintiff has consistently sought enforcement of the restrictive covenants.

Plaintiff purchased a lot that was a subdivided part of the 10-acre lot Bartlett & Co. deeded to Ferrari in 1942. The deed included the same restriction Bartlett later imposed on five-acre lots in the neighborhood. The owner subdivided the 10-acre property and permitted construction of a second residence on the new five-acre lot, apparently in violation of the restrictive covenant. But the technical violation of a restrictive covenant will not always render the covenant unenforceable. *O'Neill*, 338 Ill. at 522. If a plaintiff's violation of a covenant does not appreciably conflict with the general plan for the area and the purpose of the restriction, the plaintiff may still obtain relief against a party who threatens to abrogate the general plan more completely. *O'Neill*, 338 Ill. at 522. The technical violation here left each five-acre lot in the Hickory Lane area with one single-family home on largely undeveloped land. The violation here does not undermine plaintiff's right to enforce the covenant.

Defendant also contends that the character of the neighborhood has already changed so much that plaintiff is not likely to convince a court to enforce the covenant.

"A change in a neighborhood such as will prevent enforcement of a restrictive covenant must be so radical and complete as to destroy the purposes for which the restriction was imposed and to render the restriction unreasonable, confiscatory and discriminatory. The burden of proving such a change in the neighborhood is on the party attacking the restrictive covenant." *Hanna v. American National Bank & Trust Co.*, 266 Ill. App. 3d 544, 557, 639 N.E.2d 1326 (1994).

See also *Paquette v. Coble*, 271 Ill. App. 3d 1110, 1115, 653 N.E.2d 1262 (1995). Defendant has not met that burden here. We cannot say that the character of the Hickory Lane residential community has changed so radically that enforcing the covenants will no longer achieve the purposes for which the grantors imposed the covenants. See *Hanna*, 266 Ill. App. 3d at 554.

Finally, the court should weigh the balance of the harms from granting or denying the preliminary injunction. *Heritage Standard Bank*, 234 Ill. App. 3d at 55. Without the injunction, the development will likely alter the character of the neighborhood irrevocably, even if the court later decides in favor of plaintiff on the merits. If the court issues the preliminary injunction, defendant will be unable to develop the property, thereby preventing defendant from earning the profit sought from the property. But if the court decides in favor of defendant on the merits, the only harm from the injunction will be a delay in realizing the earnings. On balance, plaintiff's interests stand in greater need of protection pending the decision on the merits.

Plaintiff raised a fair question of a right, in need of protection, to enforcement of the restrictive covenant. Legal remedies cannot adequately protect the right, which could suffer irreparable harm without the injunction. And plaintiff showed a sufficient possibility of success to warrant maintenance of the status quo pending trial on the merits. The trial court erroneously assumed that plaintiff could not enforce the restrictive covenant absent privity of estate. We find that the trial court abused its discretion by denying the motion for a preliminary injunction. Accordingly, the decision of the court is reversed and the cause is remanded for the entry of a preliminary injunction prohibiting further development pending trial on the merits of plaintiff's claim.

Reversed and remanded.

TULLY and COHEN, JJ., concur.