# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Travelport, LP v. American Airlines, Inc.*, 2011 IL App (1st) 111761

---

| | |
|---|---|
| Appellate Court Caption | TRAVELPORT, LP, a Delaware Limited Partnership, Plaintiff-Appellee, v. AMERICAN AIRLINES, INC., Delaware Company, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-11-1761 |
| Filed | September 21, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by a computerized airline reservation business alleging anticipatory breach of contract and seeking a preliminary injunction based on defendant airline's termination of its contract with one of plaintiff's affiliates, the airline's appeal from the order requiring it to reinstate the affiliate's ability to ticket was not rendered moot by the parties' agreement to extend the affiliate's ticketing authority, and the appellate court held that the trial court did not abuse its discretion in entering a preliminary injunction pending a decision on the merits where plaintiff raised a fair question of whether it would suffer irreparable injury without the injunction, legal damages would not provide an adequate remedy, and a fair question was raised as to whether plaintiff would succeed on the merits. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-48028; the Hon. Lee Preston, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Dewey & LeBoeuf, of Chicago (Alan N. Salpeter, Vincent P. Schmeltz III, and Brian M. Westhoff, of counsel), for appellant.

Duane Morris LLP, of Chicago (Paul E. Chronis and John T. Schriver, of counsel), for appellee.

Panel                   JUSTICE NEVILLE delivered the judgment of the court, with opinion.
                        Justices Quinn and Murphy concurred in the judgment and opinion.


**OPINION**

¶ 1      Travelport, LP, sued American Airlines for anticipatory breach of contract and sought a preliminary injunction to prevent American from taking the steps it threatened to take that, according to Travelport, would breach the contract. After the judge who denied the motion for a preliminary injunction was transferred, Travelport moved for reconsideration. The successor judge heard the motion and granted Travelport the preliminary injunction it sought. We hold that the successor judge correctly found that the initial judge erred and correctly reconsidered the entire motion. Because American did not object when the successor judge heard the motion for reconsideration without hearing live testimony from the witnesses, we find that American forfeited, for this appeal, any issue concerning the successor judge's determination of the motion without live testimony. We also find that the trial court did not abuse its discretion by entering the preliminary injunction. Accordingly, we affirm the trial court's judgment.

¶ 2                              BACKGROUND

¶ 3      Travelport owns and operates a global delivery system (GDS) for travel information. The GDS includes computerized reservation systems (CRSs) designed to help travel agents find airline flights and associated products and services. Travelport obtains data from airlines and other service providers and makes the data searchable online. Travelport earns its income by charging fees when customers book flights using a CRS Travelport operates.

¶ 4      In 1993, Travelport agreed to carry flight data for American. The parties amended their agreement in 2006, in a document labeled "Preferred Fares Agreement" (PFA). In that contract, American agreed to provide complete information about its flights to Travelport for distribution to travel agencies that received their booking information through Travelport. In the contract, American specifically promised that for five years it would not "remove its grant of ticketing authority" to CheapTickets.com, a travel agency affiliated with Travelport. American acknowledged Orbitz as an affiliate of Travelport, but it did not expressly commit to granting Orbitz ticketing authority for the five-year term of the PFA.

-2-

¶ 5     In 2008, American began negotiations to replace GDSs with a different system designed to lower the costs American incurred in distributing its tickets. American asked Orbitz, in particular, to use its direct system instead of using the GDS operated by Travelport to book tickets. American and Orbitz failed to reach any agreement. On November 1, 2010, American sent Orbitz a letter in which American said it would terminate its contract with Orbitz as of December 1, 2010. In particular, American would revoke the permission it had granted Orbitz to sell tickets for American's flights.

¶ 6     On November 5, 2010, Travelport sued American for a judgment declaring that the termination of the agreement with Orbitz would breach the PFA. Travelport moved for a temporary restraining order to preclude American from discontinuing its relationship with Orbitz pending a determination on Travelport's request for a preliminary injunction.

¶ 7                          Preliminary Injunction Hearing

¶ 8     The trial court granted the temporary restraining order and held an evidentiary hearing on the motion for a preliminary injunction. Three witnesses testified: Bridget Blaise-Shamai and William Hopping of American and Kurt Ekert of Travelport. Blaise-Shamai explained American's efforts to reduce its costs through its new system, which would eliminate use of GDSs like Travelport. She recounted negotiations with Orbitz and their inability to reach any agreement. Hopping, an attorney who helped negotiate the PFA, testified about his understanding of the terms of the agreement.

¶ 9     Ekert testified that Travelport earns its income as a GDS only when its customers–mostly travel agencies–book flights through Travelport. American sold, through Travelport's affiliated agencies, $3.4 billion worth of tickets in the 12-month period before the hearing. On cross-examination, Ekert admitted that American flights booked through Orbitz accounted for only 2½% of Travelport's revenues.

¶ 10    Ekert explained that a customer using Orbitz (or another online travel agency) searches the information available from Travelport for an appropriate flight, and when the customer finds the flight he wants, he books the flight. The GDS helps the customer compare prices and times for flights from many different airlines. If the customer cannot book the flight through Orbitz, the customer must find another way to buy the ticket, usually through a different online agency that uses a competing GDS. If the court permitted American to deny Orbitz permission to sell American tickets, Orbitz would need to choose between two courses of action. Orbitz could continue to post the information American supplied to Travelport under the PFA, but then customers who searched for airline information through Orbitz would encounter the frustration of finding an American flight they wanted, but which they could not book through Orbitz. Ekert said, "it would effectively be like having a supermarket where people came to walk around and then they left to go buy elsewhere." If Orbitz stopped carrying American's information, its customers would have a strong motive to use competitors who provided more complete flight information. In either case, Orbitz and Travelport could lose customers and sales. Ekert added that Travelport's reputation, and its ability to attract new customers, depended on its ability to provide its customers full information and related services. Ekert could not estimate the number of customers or sales

Travelport would lose if American revoked Orbitz's ticketing authority. Ekert testified that if its customers switched to using programs like American's, that allowed the airlines direct contact with consumers, Travelport would go out of business.

¶ 11    Counsel for American signed a document, admitted at trial, in which counsel said, "American Airlines will not be claiming that American has or will suffer irreparable injury because of the entry of injunctive relief in this action."

¶ 12    In its complaint, Travelport alleged that a corporation that owned Travelport also owned many shares of Orbitz's stock and that stock lost value when American announced its decision to withdraw Orbitz's ticketing authority. But at oral argument, Travelport relied on the assertion in its complaint that if American disallowed ticketing by Orbitz, Travelport would lose bookings, and bookings provided Travelport its revenue. American answered that discontinuing Orbitz's ticketing authority would not breach the PFA, and American had revoked the ticketing authority of other travel agencies without protest from Travelport. Although American had raised the issue of standing in a pretrial motion, at trial neither party argued standing.

¶ 13    On December 21, 2010, Judge Martin Agran entered an order denying Travelport's motion for a preliminary injunction. Judge Agran recounted the elements of proof needed for a preliminary injunction and said:

> "Orbitz is a separate and distinct publically traded corporation. [American] in its November 10, 2010 email advised Orbitz that it was terminating its rights under the 0charter agency agreement ***, an agreement separate and apart from the PFA. It is the Court's opinion that Travelport does not have standing to sue on behalf of Orbitz. If it does not have standing, it does not have a protectable interest.
>
> ***
>
> *** Without a protectable interest there can be no fair question of a likelihood of success on the merits of the case.
>
> * * *
>
> *** Travelport argues that its existing and prospective customer relationships have been irreparably damaged. Kurt Ekert testified at his deposition that he was not aware of any accounts that have left Travelport; that he is not aware of any travel agency that is currently a travel agency of Travelport who has signed an agreement with American to use their Direct Connect system and to not use the Travelport GDS[.] *** He also stated in court that 'if American is successful in its actions here, I believe the customer migration away from Travelport to American's direct connect or other solutions will be massive.' *** The irreparable harm that is claimed at this juncture is based on beliefs and fears and is too speculative to allow the entry of a preliminary injunction.
>
> ***
>
> *** Because it appears that money damages will be ascertainable in the event of a breach of contract, the plaintiff has not established that there is no adequate remedy at law.

"***

*** Because it is the Court's opinion that the aforementioned criteria for entry of a preliminary injunction have not been met, the balancing of equities is not, at this time, a necessary consideration."

¶ 14                                    Reconsideration

¶ 15    Travelport promptly moved for reconsideration. American promptly terminated Orbitz's ticketing authority. Travelport amended its complaint to add a claim for damages it suffered because American terminated Orbitz's ticketing authority.

¶ 16    Judge Agran accepted a transfer to another courthouse, and a new judge, Lee Preston, took over Judge Agran's docket. Judge Preston heard the motion for reconsideration on May 23, 2011. Neither party sought to transfer the case to Judge Agran for ruling on the motion for reconsideration. Neither party sought leave to present any testimony at the hearing on the motion for reconsideration.

¶ 17    Judge Preston held:

"The court's denial of the motion for preliminary injunction was based primarily on the determination that Travelport did not have an ascertainable right in need of protection. The court determined that Travelport did not have standing to sue on behalf of Orbitz, and thus does not have a 'protectable interest.' ***

The court concedes that it erred in ruling that Travelport did not have standing in this action because Travelport is not suing on behalf of Orbitz. *** American will allegedly breach the PFA and the Full Content Agreement if it withdraws ticketing authority from Orbitz. ***

***

Because the court erred in determining that Travelport did not have an ascertainable right in need of protection, the court must reconsider the other elements for a preliminary injunction. The second element that Travelport must establish is whether it will suffer irreparable harm without the preliminary injunction. ***

'Once a protectable interest is established, irreparable injury is presumed if that interest is not protected.' *Cameron v. Bartels*, 214 Ill. App. 3d 69, 73 (4th Dist. 1991) ***. Thus, under Illinois law, the irreparable injury that Travelport will suffer and has suffered if American terminates its agreements with Orbitz is presumed. This presumption is supported by the testimony of Mr. Ekert and Ms. Blaise-Shamai during the motion hearing. Mr. Ekert stated that the reputation of GDS's like Travelport is fundamental to the success of the GDS. *** Ms. Blaise-Shamai also testified that what is said in the press affects an airline's or a GDS's reputation. *** The evidence provided by plaintiff Travelport in its briefs and during the motion hearing sufficiently demonstrated that Travelport would suffer irreparable harm if American terminated its agreements with Orbitz. ***

*** Travelport has sufficiently alleged facts and presented evidence that demonstrate that it has a probability of success if the allegations in its Complaint are

proven true. ***

Further, Travelport demonstrated that a legal remedy may not be adequate in this case. *** Travelport set forth sufficient evidence demonstrating that it would suffer lost revenue, customers, and goodwill."

¶ 18    The court ordered American to reinstate Orbitz's ability to ticket American flights from the date of the order until the expiration of the PFA, scheduled for September 1, 2011. American appealed under Supreme Court Rule 307(a)(1) (Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010)). After American filed the appeal, the parties reached an agreement extending Orbitz's ticketing authority past September 1, 2011. Travelport moved to dismiss the appeal as moot, and American opposed the motion. Both parties filed separate briefs concerning mootness.

¶ 19                                    ANALYSIS

¶ 20                                    Mootness

¶ 21    Rule 307(a)(1) gives this court jurisdiction to hear this interlocutory appeal from the order that imposed a preliminary injunction requiring American to reinstate Orbitz's ticketing authority. After the court entered the injunction, the parties reached an agreement to extend Orbitz's ticketing authority. Travelport contends that the agreement moots the appeal.

¶ 22    American cites *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52 (2006), as authority for finding that we should decide the appeal. In *Mohanty*, which also involved an interlocutory appeal under Supreme Court Rule 307(a)(1), the appellate court ordered the trial court to enter a preliminary injunction to enforce a restrictive covenant in the parties' employment contract. The restrictive covenant and the preliminary injunction lapsed before our supreme court decided the appeal. Our supreme court found that the expiration of the injunction did not moot the appeal because a decision concerning the validity of the covenant would directly affect the defendant's recovery on its claims for misappropriation and unjust enrichment due to the plaintiff's alleged violations of the restrictive covenants.

¶ 23    We find American's appeal here effectively indistinguishable from the appeal in *Mohanty*. Although the injunction here no longer has effect, Travelport has sued for damages it suffered when American allegedly breached the PFA by discontinuing Orbitz's ticketing authority. The trial court must decide whether the PFA precluded American from discontinuing Orbitz's ticketing authority. Because a decision on the preliminary injunction could affect the parties' rights that remain at issue in this case, we find that the appeal is not moot.

¶ 24                        Reconsideration by Successor Judge

¶ 25    Judge Preston reconsidered Judge Agran's order and entered an injunction that required American to reinstate Orbitz's ability to ticket American flights. A trial judge has authority to reconsider a prior judge's rulings, but the successor judge should exercise restraint in using that authority, especially if the circumstances show that the party seeking reconsideration shopped for a more sympathetic judge. *Balciunas v. Duff*, 94 Ill. 2d 176, 187-

88 (1983). But a successor judge may always correct legal errors in the prior judge's orders. *Brandon v. Bonell*, 368 Ill. App. 3d 492, 502 (2006).

¶ 26    Here, the facts indicate that Travelport did not shop for a new judge. Judge Agran focused on the needless surplusage in Travelport's complaint about the ownership of Orbitz's stock, which obscured the more crucial allegations that Travelport stood to lose income from bookings if American terminated Orbitz's ticketing authority. In the PFA, American agreed to provide flight information to Travelport for distribution to travel agencies, like Orbitz, that obtained information from Travelport, and Orbitz could not use the information without ticketing authority. Travelport has standing to complain that American breached the PFA, and its implicit covenant of good faith, by barring Travelport from earning income from booking flights through one of its largest sources of revenue, Orbitz. Judge Preston correctly found that Judge Agran erred, as a matter of law, when he held that Travelport lacked standing to pursue its complaint. See *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004) (motion to dismiss for lack of standing presents an issue of law).

¶ 27    American does not now argue that Travelport lacked standing to bring the complaint. Instead, American argues that we should subject the trial court's order to special scrutiny because American actually revoked Orbitz's ticketing authority following Judge Agran's decision on the motion for a preliminary injunction and, therefore, Judge Preston's order will not preserve the status quo. However, when the court enters a preliminary injunction, it seeks to preserve, as the status quo, the last, uncontested, peaceable status preceding the controversy. *Gannett Outdoor of Chicago v. Baise*, 163 Ill. App. 3d 717, 721 (1987). At the time Travelport filed suit and sought the preliminary injunction, Orbitz had ticketing authority for American flights. Judge Preston properly addressed the question of whether the evidence in the record supported Judge Agran's decision to deny Travelport a preliminary injunction that would preserve the status quo and Orbitz's authority to sell tickets for American flights. Because Judge Preston correctly found that Judge Agran erred on a legal issue, he properly reconsidered the order. *Brandon*, 368 Ill. App. 3d at 502.

¶ 28                                  Record on Review

¶ 29    Both parties rely on facts and evidence not presented to the trial court, and both parties move to strike portions of each other's statements of facts. We will consider only the evidence properly before the trial court, so we grant both parties' motions to strike from the briefs statements of fact not supported by evidence presented to the trial court. See *Stokes v. Colonial Penn Insurance Co.*, 313 Ill. App. 3d 202, 204 (2000).

¶ 30                                    Due Process

¶ 31    American argues that Judge Preston violated its right to due process by hearing the motion to reconsider based solely on the written record, without rehearing the testimony presented on the motion. We find that American (1) never asked Judge Preston for a transfer to have Judge Agran hear the motion to reconsider; (2) never objected to Judge Preston hearing the motion; and (3) never asked Judge Preston to hear any testimony. Because American did not raise the argument about due process in the trial court, we find that

-7-

American forfeited the issue. *Frazier v. Dettman*, 212 Ill. App. 3d 139, 148 (1991). Finally, because the trial court could have corrected any error had American raised the issue before the hearing on the motion to reconsider, we will not address the forfeited issue on its merits. See *People v. Hill*, 345 Ill. App. 3d 620, 632 (2003).

¶ 32                                     Standard of Review

¶ 33      We review the decision to enter the preliminary injunction under familiar standards. "A preliminary injunction, even if mandatory, is justified if necessary to maintain the status quo and prevent irreparable harm." *Gold v. Ziff Communications Co.*, 196 Ill. App. 3d 425, 432 (1989). A court may use a preliminary injunction to compel compliance with a contract, especially where the "plaintiff seeks merely a continuation of the contract ***, not a creation of a new contractual relationship." *Gold*, 196 Ill. App. 3d at 432. To decide whether to enter a preliminary injunction pending a full trial on the merits of a complaint, the court should consider whether the plaintiff has shown (1) it has a right in need of protection; (2) legal remedies will not adequately protect the right; (3) without the injunction, it will suffer irreparable harm; and (4) if the proof sustains the allegations, it will likely succeed on the merits. *Save the Prairie Society v. Greene Development Group, Inc.*, 323 Ill. App. 3d 862, 867 (2001). The plaintiff must establish a "fair question" as to each of the elements. *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010). The court should also consider the balance of the equities. *Shodeen v. Chicago Title & Trust Co.*, 162 Ill. App. 3d 667, 673 (1987). The trial court has discretion to grant or deny the request for a preliminary injunction, and we limit our review to determining whether the court abused that discretion. *Save the Prairie*, 323 Ill. App. 3d at 867.

¶ 34                                  Right in Need of Protection

¶ 35      In the PFA, American agreed to provide Travelport information about American's flights. Travelport earns income based on American's information when travel agencies use that information to book flights. The court found that Travelport raised a fair question of whether it had a right under the PFA to continuing useful, productive access to the information from American, and whether American would breach the PFA if it precluded Orbitz from booking American's flights. The trial court did not commit reversible error by finding that Travelport raised a fair question of whether it had a protectable interest in the contract. See *Mohanty v. St. John Heart Clinic*, 225 Ill. 2d 52, 62 (2006).

¶ 36                                      Irreparable Injury

¶ 37      Judge Agran found that Travelport could not point to any specific customers or bookings it would lose due to the threatened breach of contract, and he concluded that the alleged harm was "too speculative to allow the entry of a preliminary injunction." Judge Preston did not disturb any of Judge Agran's findings of fact, but he disagreed with the conclusion of law that the alleged harm could not support a preliminary injunction. See *In re Schaller*, 27 B.R. 959, 962 (Bankr. W.D. Wisc. 1983) (finding that a benefit was too speculative to provide a basis for relief classified as a conclusion of law). Judge Preston added some findings of fact

that Judge Agran did not address in his order. In particular, Judge Preston found that Ekert testified about the difficulties customers would face if they tried to book flights on American through Orbitz, and how those difficulties could drive the customers to use competing online travel agencies and competing GDSs. The parties could not readily measure the amount of business Travelport would lose due to new customers preferring to book flights through online travel agencies and GDSs that could provide more complete services, and could not readily measure the amount of business Travelport would lose from its former customers migrating to other agencies and using their GDSs.

¶ 38    We find that this case bears notable similarity to *Falcon, Ltd. v. Corr's Natural Beverages, Inc.*, 165 Ill. App. 3d 815 (1987), and *Gold*, 196 Ill. App. 3d 425. In *Falcon*, the plaintiff sold the defendant's beverages through a distribution network. The defendant then sold its beverages directly to the subdistributors, allegedly in breach of a contract between the plaintiff and the defendant. The trial court entered a preliminary injunction to prevent the defendant from selling its beverages directly to the subdistributors pending a decision on the complaint for breach of contract. The appellate court affirmed, holding:

> "While immediate damages in loss of commissions may be calculable, the injury to plaintiffs' reputation and good will, and the resulting loss of existing and future business, is incalculable. [Citation.] ***
>
> *** An injury is 'irreparable' when it is of such a nature that the injured party cannot be adequately compensated in damages or when damages cannot be measured by any pecuniary standard. [Citation.] The loss of sales and customers as well as the threat of continuation of such losses to a legitimate business interest, as alleged by plaintiffs in the present case, have been held sufficient to constitute irreparable injury." *Falcon*, 165 Ill. App. 3d at 820-21.

¶ 39    In *Gold*, the defendant stopped running advertisements for the plaintiff's products, allegedly in breach of a contract. The trial court entered a preliminary injunction that required the defendant to run the ads pending a decision on the merits of the case. The *Gold* court affirmed and explained:

> "The failure of plaintiff to show an actual loss is not dispositive of the issue of whether a preliminary injunction is appropriate. The court must look to the entire record to determine if irreparable harm would occur absent a preliminary injunction. [Citation.] The loss of customers and sales and the threat of continuation of such losses to a legitimate business interest, as alleged by plaintiff here, is sufficient to show that plaintiff will suffer irreparable injury unless protected. [Citations.] While immediate damages in loss of sales may be calculable, the potential loss of future business is incapable of adequate computation [citation], and a preliminary injunction may be granted when it is difficult to quantify the damages caused by the loss of future customers and revenues." *Gold*, 196 Ill. App. 3d at 434-35.

¶ 40    Here, too, while the parties may reach a reasonable estimate of immediate lost bookings, they could not reasonably calculate the resulting loss of current and prospective customers and all of their bookings due to the damage to Travelport's reputation and goodwill.

¶ 41    American objects strenuously to the trial court's invocation of the principle that once the

plaintiff establishes that it has a right in need of protection, the court presumes that the plaintiff will suffer an irreparable injury if the court does not protect that interest. See *Cameron v. Bartels*, 214 Ill. App. 3d 69, 73 (1991). American claims that this principle applies in only two kinds of cases: (1) where the defendant has misappropriated the plaintiff's property and threatens to destroy its value; and (2) where the plaintiff seeks to prevent the defendant from violating a statute. We note, however, that American cites no case that so limits the general principle stated in *Cameron*. Moreover, the court here relied on the evidence that Travelport would lose customers and goodwill, and the parties would have difficulty estimating the long-term effects on Travelport's business. The court did not rely primarily on the presumption it noted. We cannot say that the trial court committed reversible error by finding that Travelport raised a fair question of whether it would suffer irreparable injury without the injunction.

¶ 42                              Adequacy of Legal Remedy

¶ 43    Travelport pursues only its own profits, so money can compensate it for its loss. The legal remedy may prove inadequate nonetheless due to the difficulty in assessing the loss Travelport would suffer in the absence of the injunction. The court addressed a similar issue in *Gannett*, where the defendant threatened to remove a sign that the plaintiff rented to advertisers. The *Gannett* court reasoned:

> "Defendant claims that plaintiff can be adequately compensated by damages in a civil suit ***. Defendant fails to account for the effect of 'showings' on plaintiff's earning potential. Plaintiff offered evidence that advertisers often seek a 'showing,' which is a program in which a number of signs in different geographic areas are made available for a coordinated program in the advertiser's attempt to reach targeted areas or groups of consumers. [A witness] testified that if plaintiff could not provide a sign which was critical to the showing, the advertiser would go to another company that could deliver the whole package. This sign may be critical to a showing by virtue of its location and interstate exposure. The record indicates that plaintiff does not own other signs with interstate exposure in the area, and thus, if this sign is not available for plaintiff to sell as part of a showing, advertisers may go to another sign company ***. The loss of income from a potential loss of showing is difficult to calculate, and for this reason we find that plaintiff has no adequate remedy at law." *Gannett*, 163 Ill. App. 3d at 722.

See also *Falcon*, 165 Ill. App. 3d at 820-21.

¶ 44    Here, customers searching for travel packages want to book the flights they find. When American frustrates that purpose by not allowing the customers to use Orbitz to book its flights, customers will likely look to other online agencies, ones that use different GDSs, to find an agency that can deliver the complete package of services they need. The parties can only guess the income Travelport stands to lose from the loss of former customers and the failure to attract new customers. The trial court did not commit reversible error by finding that Travelport raised a fair question of whether legal damages would adequately remedy the injury it would suffer in the absence of a preliminary injunction.

-10-

¶ 45                         Likelihood of Success on the Merits

¶ 46      American points out that Travelport faces considerable hurdles in its efforts to show that American would breach the PFA by revoking Orbitz's ticketing authority. The PFA does not expressly preclude American from revoking that authority, and the PFA does explicitly preclude American from revoking the ticketing authority it granted to another Travelport affiliate, CheapTickets.com. Travelport relies primarily on the duty of good faith and fair dealing as support for its contention that American implicitly committed itself to allowing Orbitz to book flights on American. When American promised in the PFA to provide Travelport full content for distribution to travel agencies affiliated with Travelport, it arguably promised to permit the agencies to use the information in a way that would allow Travelport to profit from the use, and Travelport earned income from the information only when its travel agencies booked flights on American. The trial court did not commit reversible error in finding that Travelport raised a fair question of whether it could succeed on the merits.


¶ 47                              Balance of the Equities

¶ 48      Before imposing a preliminary injunction, "the trial court must conclude that the benefits of granting the injunction outweigh the possible injury that the opposing party might suffer as a result thereof." *Gannett*, 163 Ill. App. 3d at 721. The trial court here found the balance of the equities inapplicable because American wilfully terminated Orbitz's ticketing authority. The general rule requiring the court to balance the equities does not apply when the defendant has acted tortiously or when the defendant has wilfully violated the plaintiff's clearly established rights. *Kalbfleisch v. Columbia Community Unit School District Unit No. 4*, 396 Ill. App. 3d 1105, 1119 (2009). Here, American claims that the PFA does not preclude it from revoking Orbitz's ticketing authority, and some of the language of the PFA appears to support American's claim. We agree with American that in this case the trial court should have considered the relative harm each party would suffer if the court entered or refused to enter the preliminary injunction.

¶ 49      However, we find that the court would have reached the same conclusion if it had balanced the equities. American stipulated at the evidentiary hearing that it would not claim that it would suffer any irreparable injury if the trial court entered a preliminary injunction. Because the injunction only permits Orbitz to continue selling American's tickets, while still permitting American to sell its tickets through all other means of distribution it uses, American will apparently suffer no damage from imposition of the injunction. Travelport, on the other hand, presented significant evidence that it might suffer considerable irreparable injury without the injunction. Thus, the balance of the equities favors the imposition of the preliminary injunction. Although Judge Preston should have balanced the equities, we find that the failure to do so did not cause reversible error.


¶ 50                                   CONCLUSION

¶ 51      Our decision on this appeal could affect the rights that remain at issue in the counts of

the amended complaint in which Travelport seeks to recover damages. Therefore, the parties' agreement extending Orbitz's ticketing authority does not moot this appeal. Judge Preston properly reconsidered the initial order Judge Agran entered based on his finding that Travelport lacked standing to sue American for an alleged breach of the PFA. Because American failed to raise the issue in the trial court, American forfeited any objection to having Judge Preston decide the motion to reconsider without hearing any live testimony from the witnesses. The trial court did not abuse its discretion when it entered a preliminary injunction to preserve the status quo pending a decision on the merits of the complaint. Accordingly, we affirm the trial court's judgment.

¶ 52       Affirmed.